## MILLS et al. v. BAIRD.

### No. 8979.

Court of Civil Appeals of Texas. Austin.

Jan. 15, 1941.

Rehearing Denied Feb. 5, 1941.

314

Malone, Lipscomb, White & Seay, of Dallas, for appellant United States Fidelity & Guaranty Co.

Wallace & Wallace, of Cameron, for appellants other than surety company.

Parker V. Lucas, of Dallas, and W. A. Morrison, of Cameron, for appellee.

McCLENDON, Chief Justice.

This is a bill of review proceeding brought in the County Court of Milam County to set aside the final account of the administratrix of the estate of Wilford McKay Mills, on the ground of fraud. The suit was brought by Mrs. Mary Baird, appellee here (the surviving wife of deceased, but since married again and divorced), against the administratrix, Mrs. Bell Mills, mother of the deceased and one of the appellants here. The County Court sustained a plea in abatement to the suit and dismissed it, whereupon Mrs. Baird seasonably appealed to the District Court. In that court Mrs. Baird was permitted to make Mrs. Mills' surety on her bond as administratrix (United States Fidelity and Guaranty Company) and her four children

parties respondent. These and Mrs. Mills constitute all the appellants here. The trial was to the court without a jury, and judgment was rendered disapproving the final account, restating it, and ordering the administratrix to pay over to appellee the sum of $5,109.74, with 6 per cent. interest per annum thereon from September 7, 1934, the date the petition for review was filed in the County Court. The appeal is from this judgment by the administratrix, her surety, and four children.

The controversy grew out of the following facts: Wilford McKay Mills, a World War veteran, died in 1921, leaving surviving his wife, appellee, and his mother, appellant Mrs. Mills, and his father. He had a $10,000 War Risk Insurance policy, payable to his father, who, upon his (the son's) death, collected $57.50 per month thereon until his (the father's) death, in March, 1930. Thereafter Mrs. Mills was appointed administratrix of her son's estate, and collected from the Federal Government as such administratrix the then balance owing on the policy, $6,087.50. February 25, 1931, appellee signed an agreement whereby she relinquished her interest in the policy for $500. The estate was then closed. April 4, 1935, appellee filed suit in the District Court of Milam County against Mrs. Mills and her four children to set aside this agreement, on the ground of fraud. The resulting judgment was for defendants. Appellee appealed to this court which reversed the judgment and rendered judgment in her favor, adjudging her to be the owner of the policy and cancelling the agreement on the ground that the record showed as a matter of law that it was procured by fraud, and that appellee's cause of action to set it aside did not accrue until April, 1932, when she first discovered the fraud or was put upon inquiry concerning it. Except in one respect as regards the surety, noted hereafter, there is no material difference between the two cases in respect to allegations and proof upon the subject of limitation. Hence, with this exception, we pretermit discussion of the points here urged thereon; overrule them upon the authority of the former decision; and refer to the opinion in that case for a full statement and consideration of the facts and issues presented on this branch of the case. 119 S.W.2d 889.

The other issues raised in the appeal relate in the main to jurisdiction and limitation.

First, it is contended that since the surety was not made a party, the proceeding constituted a collateral attack on the order approving the final account and closing the estate; that its character as a collateral attack could not be changed by amendment making new parties in the District Court; and that, since the order was not absolutely void, but merely voidable, its invalidity could only be questioned in a direct attack.

The first proposition in this contention is correct. It is a well established doctrine that a judgment may not be set aside on direct attack unless all persons at interest are made parties to the proceeding. This is predicated upon the general proposition that defective direct proceedings are held to be governed by the principles applicable to collateral proceedings. See 25 Tex.Jur., p. 754. The same principle has been applied to probate proceedings. Pure Oil Co. v. Reece, 124 Tex. 476, 78 S.W.2d 932.

On the other hand, it has been recognized from the earliest times that the jurisdiction of the District Court on appeal from the County Court in probate proceedings is as broad and comprehensive as that of the County Court; save only that new issues or causes of action may not be set up for the first time in the District Court. Expressly has this principle been uniformly held to authorize the making of new, although necessary, parties in the District Court. Phelps v. Ashton, 30 Tex. 344, 345; Vance v. Upson, 64 Tex. 266; Ramon v. Worsham, Tex.Com.App., 42 S.W.2d 1010; Marshall v. Stubbs, 48 Tex.Civ. App. 158, 106 S.W. 435; Pipkin v. Turner, Tex.Civ.App., 277 S.W. 221. The opinion in Ramon v. Worsham was by Judge Leddy of the Commission of Appeals. Involved was an appeal by a contestant from an order of the County Court admitting a will to probate. In the District Court proponents impleaded another party who had filed an independent suit in the County Court contesting the probate. It is interesting to note that in the original opinion of Judge Leddy (Tex.Com.App., 35 S.W.2d 699), it was held that new parties could not be made in the County Court. This holding was set aside on rehearing and it was held: "The jurisdiction of the district court upon a trial de novo was as comprehensive as that possessed by the county court; hence any person interested in the proceeding had the same right to intervene or be made

a party in the cause upon appeal in the district court as when the cause was pending in the county court."

Marshall v. Stubbs was decided by this court, Chief Justice Fisher writing. That was an appeal from an order of the County Court setting aside a prior order probating a will. The District Court remanded the proceeding to the County Court in order to make the sole legatee in the will a party. This judgment was reversed, this court holding that the trial being de novo, the District Court had no power to remand the proceeding, but had all the powers of the County Court even to making the sole legatee (a necessary party) a party to the proceeding.

We are not impressed with the soundness of the argument that the jurisdiction to make new parties was wanting in the District Court since the effect of making such new parties was to change the character of the proceeding from a collateral to a direct attack upon the order. It is true that so long as necessary parties were wanting the proceeding maintained the nature of a collateral attack. But this was due solely to a defect in necessary parties. All other elements constituting a direct attack were present,—the same court and the same subject matter. The pleadings which framed the issues were the same in the County Court as in the District Court. No new issue was injected in the District Court. The amendment merely included necessary parties not brought in in the County Court. The object of the proceeding was the same in both courts,—to set aside an order approving a final account. The bases for the relief sought were the same—fraud in the same respects in both courts. Manifestly, the power inhered in the County Court to add new parties to the proceeding; and it follows from the above holdings that the District Court on appeal had the same power, there being no effort thereby to add new issues or new grounds of recovery to those asserted in the County Court.

The limitation question above adverted to follows: the surety contends that since it was not a party to or cognizant of the fraud, limitation was not tolled thereby as to it, and the action was barred as to it since four years had elapsed since order approving the final account (April 7, 1931) and prior to the amendment in the District Court making it a party to the proceeding (May 8, 1935). The only cita-

tion in support of this proposition is Martinez v. Gutierrez's Heirs, Tex.Civ.App., 172 S.W. 766, 770, by the San Antonio court, Judge Carl writing. The point was not necessary to the decision, since the court held that the statute was not tolled as to the principal. The opinion reads: "The evidence in this case is totally insufficient to prevent the running of the statute." The additional holding that the sureties, not being parties to the fraud, limitation was not tolled as to them was predicated upon the statute (Art. 5528) which provides that "all suits on the bond of any * * * administrator * * * shall be commenced and prosecuted within four years next after the * * * discharge of such * * * administrator * * *, and not thereafter." It is stated that the object of such statutes is "to fix a time certain for the benefit of sureties, so that they may know definitely when their obligations as sureties will terminate." In so far as this particular statute is concerned the following quotation from page 68 of the surety's brief, in which we fully concur, demonstrates that it has no application to this proceeding: "This suit is not one to recover upon the bond of the administratrix, but is one to set aside the order closing the estate and asking that the court order the administratrix to pay the money belonging to the estate over to appellee."

And this is all the judgment awarded.

 The applicable statute, as conceded by the surety and as held in the former opinion, is Art. 5529, which provides that the action "shall be brought within four years next after the right to bring the same shall have accrued and not afterward." As held in the former opinion, the right to bring the action did not accrue as to the principal until she discovered or should have discovered the fraud. And since the surety was only secondarily liable and could not be sued without its principal, it would seem logically to follow that the cause of action as to it did not accrue until that against its principal accrued. The undertaking of the surety is to make good any breach of official duty of its principal, whether or not tainted with fraud—not because of anything the surety may have done or failed to do, but because the surety has so bound itself by its undertaking. Fraud of its principal, with all its consequences, is a risk it assumes to compensate by virtue of its obligation of suretyship. As already stated, it was adjudicated in the prior decision, upon substantially the same pleading and evidence as here, that the cause of action did not accrue until April, 1932, less than four years prior to impleading the surety in the District Court. Ruling Case Law, vol. 21, p. 1080, § 121, states the applicable general rule, without qualification, to be: "The liability of the principal is that of the surety, and, where the statute of limitation does not begin to run because of the concealed fraud of the principal, the surety can not invoke the aid of the statute on the ground that he was innocent of the fraud." Three leading cases are cited in support of the text. They are each well considered, and carefully review the adjudicated cases upon the subject. It would serve no useful purpose to quote from them here. They are listed under Note 17 to the above-quoted text.

 The next point urged by appellants is that the fraud pleaded and proved was of the class designated in the decisions as "intrinsic fraud" which can not be availed of to set aside a judgment in a bill of review or other direct proceeding instituted as a separate action after the expiration of the term at which the judgment was rendered. The doctrine that a judgment may not be set aside for "intrinsic" fraud is quite generally accepted and has been repeatedly recognized in this state. The following quotation from a very recent (1940) standard text embodies the generally accepted elements which mark the distinction between "intrinsic" fraud, on the one hand, and "extrinsic" or "collateral" fraud on the other: "The acts for which a court of equity will, on account of fraud, grant relief from a judgment have relation to extrinsic or collateral fraud; intrinsic fraud is not sufficient for equitable relief. Fraud has been regarded as intrinsic, within the meaning of this rule, where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein. Accordingly, fraud cannot properly be said to be extrinsic, so as to warrant relief from a judgment based thereon, where the court rendering the judgment had before it the same issue of fraud on the same essential facts. On the other hand, fraud has been regarded as extrinsic or collateral, within the meaning of the rule here under consideration, where it is one the effect of which prevents a party from having a trial or from presenting all of his case to

the court, or where it operates upon matters pertaining, not to the judgment itself, but to the manner in which it is procured, so that there is not a fair submission of the controversy." 31 Am.Jur. pp. 230–232, § 654.

While a statement of the general rule defining intrinsic and extrinsic fraud is quite clear in the abstract, as applied to particular situations, the distinction has been characterized as "quite nebulous," by the California Supreme Court in the well-considered case of Caldwell v. Taylor, 218 Cal. 471, 23 P.2d 758, 88 A.L.R. 1194, to which is appended an extensive note beginning at page 1201. The facts of that case are clearly illustrative of the two classes of fraud. The suit was one to set aside the probate of a will on the ground of fraud practiced upon the testator. This was held to be intrinsic and not available alone to sustain the action. However, there was fraud, held to be extrinsic consisting of "that practiced upon an heir of testator in deliberately misrepresenting, in answer to direct questions on the point, her (the legatee's) true name and past life, thereby preventing the heir from discovering the true facts in time for a contest of the will, and depriving him of an opportunity of properly presenting the real issues."

It is quite generally held that perjured testimony falls within the category of intrinsic fraud. The leading case upon the subject is United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93. That case was followed in Reed v. Bryant, Tex. Civ.App., 291 S.W. 605, and State v. Wright, Tex.Civ.App., 56 S.W.2d 950. On the other hand, perjured testimony of the husband in a divorce proceeding, coupled with concealment from the wife of the true nature and extent of the community property, was, in a suit by the wife to set aside the decree partitioning the property, held to be extrinsic, in McMurray v. McMurray, 67 Tex. 665, 4 S.W. 357, Associate Justice Stayton writing. In the well-considered case of Ralls v. Ralls, Tex.Civ.App., 256 S.W. 688, error dismissed, opinion by Judge Boyce of the Amarillo court, it was held that fraud of the husband in procuring a separation agreement made prior to divorce proceedings, which was subsequently carried into the divorce decree, was extrinsic, and would warrant setting aside that portion of the decree. We do not think a further review of the authorities

necessary at this time. It seems quite clear that the fraud here perpetrated upon appellee, which is fully set out in the original opinion, was extrinsic or collateral, and had the direct effect of preventing her from presenting her claim in the County Court. We refer to that opinion for a comprehensive statement of the pertinent facts, which were not essentially different in the instant case.

It is further contended by appellants that the District Court was without jurisdiction to order the administratrix to pay over the net balance of the insurance money to appellee, since the administratrix was claiming the fund in her own right, and the County Court originally, and therefore the District Court on appeal, had no jurisdiction to adjudicate the title to the fund. There is no merit in this contention for two reasons. First, there was no question but that the fund belonged to the estate of appellee's deceased husband, and that she was entitled to it as his sole heir at law. See authorities in former opinion. Moreover, it was collected by the administratrix, in her representative capacity, from the Government as such asset, and was so listed and treated by her. There was no bona fide dispute as to the ownership of the fund; and no substantial litigable issue was presented regarding it. The claim of the administratrix, set up for the first time in this proceeding, was manifestly an afterthought.

In the second place, the title to the fund was necessarily involved in the former suit to set aside the "family agreement," and it was there held to belong to appellee. The judgment in that case was against the administratrix and her children, and was clearly res judicata as to them.

Finally, it is contended that the trial court erred in requiring the administratrix to pay interest on the fund. This contention is likewise without merit. The administratrix occupied the relation of a trustee and was clearly chargeable with interest on the fund wrongfully withheld from appellee, at least from the date of its demand, as was adjudged by the trial court. Thomas v. Hawpe, 35 Tex.Civ.App. 311, 80 S.W. 129, error denied, where the highest legal rate was approved. Here the court only allowed the lowest legal rate.

The trial court's judgment is affirmed.

Affirmed.