George TURNER, et ux., Appellants.

v.

Bertha MILLER, by next friend W. B. "Dub" Robertson, Jr., Appellee.

No. 6953.

Court of Civil Appeals of Texas, El Paso.

April 22, 1981.

Rehearing Denied June 17, 1981.

Arturo C. Gonzalez, Del Rio, for appellants.

Charles Sherrill, Sonora, Donald W. Griffis, William H. Ervine, Jr., San Angelo, for appellee.

## OPINION

WARD, Justice.

This suit was filed by the guardian of the person and estate of an elderly mental incompetent to set aside surface and mineral deeds and other instruments executed by the incompetent to the two Defendants, concerning the incompetent's ranch. Suit was instituted on various theories including breach of fiduciary relationship, lack of mental capacity, force, threat, duress, and lack of consideration. Trial was to the Court sitting without a jury, and judgment was entered in favor of the Plaintiff. Findings of fact and conclusions of law were neither requested nor filed. The Defendants appeal, and we affirm.

Generally, the underlying facts before us show that Bertha Miller was an 82-year old widowed ranch woman. The ranching business and affairs were managed by her only son. He died in January, 1974, and Mrs. Miller became despondent and lived alone on her ranch. She thereafter became acquainted with Mr. and Mrs. George Turner, and she sold all of her cattle to Mr. Turner. As a part of that transaction, the Turners acquired the right to graze their cattle on the Miller ranch until the fall of 1974. They moved a trailer out to the ranch, near the house where Mrs. Miller was living. In a short while, they had befriended the elderly woman and a close familylike relationship arose whereby Mrs. Miller considered and treated the Turners as her own children. In April of 1974, she executed a grass lease to the Turners and granted therein an option to purchase both surface and minerals at a price of $80.00 an acre. In July, 1974, she gave George Turner a general power of attorney, and later executed one to Mrs. Turner as well. In 1977, the Turners moved out of their trailer and began living with Mrs. Miller in her ranch home as she needed someone to take close care of her. By this time, the Turners were handling almost all of Mrs. Miller's business affairs; had opened joint bank accounts with her; and various sums of money were transferred by the parties between the accounts. There was considerable testimo-

ny, although controverted, that Mrs. Miller through these years was drinking excessively and suffering from related complications; that she had been hospitalized some fifty or sixty times since 1970 from her drinking; and this condition often prevented her from being rational.

In January, 1978, a second grass lease was executed by Mrs. Miller, and a new option was granted the Turners to purchase the surface and minerals of the ranch for $70.00 an acre for a total sum of approximately $207,000.00. In April, 1978, the Turners stated that they would exercise their option, and at that time, Mrs. Miller proposed that they could have the ranch if they would assume the balance of approximately $34,000.00 due on the first lien note and pay her the sum of $1,000.00 a month for the balance of her life. Following this offer, surface and mineral deeds to the ranch were executed by Mrs. Miller and the ranch was conveyed to the Turners. As the new owners, the Turners started receiving the benefits from the ranch, including gas royalties amounting to approximately $40,000.00 a year while paying Mrs. Miller the $1,000.00 a month. About the first of December of 1978, interested relatives took Mrs. Miller to live with them. A guardian of her person and estate was then appointed, and the present suit instituted to cancel the various instruments and for an accounting.

■ Since no findings of fact or conclusions of law were requested or filed, it will be implied that the trial Court made all the necessary findings to support its judgment provided valid factual propositions were raised by the pleadings and supported by the evidence. The rule has also been expressed as requiring the appellate court to affirm the judgment if it can be sustained on any reasonable theory supported by the evidence and authorized by law. *Burnett v. Motyka*, 610 S.W.2d 735 (Tex. 1980); 4 McDonald, Texas Civil Practice sec. 16.10 (rev.1971) at page 30. In this case, it is apparent that the trial Court found that a fiduciary relation existed between Mrs. Miller and the Appellants; that

a breach of that relationship occurred; and on this basis the instruments were set aside. The Appellants attack the evidentiary support in the record of the various theories made by the guardian for Mrs. Miller, yet only inferentially is any point advanced attacking the evidentiary support concerning the fiduciary relationship. Assuming that such an attack is before us, we will note certain other facts.

■ The Appellants pleaded, proved and now concede that a very close familylike relation existed between the Appellants and Mrs. Miller beginning soon after the original cattle transaction was made. It was their testimony that they always acted for her best interests in handling her affairs and in acting under the powers of attorney. Proof was offered by them that the conveyances and monetary transactions were made because of the affection that she bore toward them, and that it was her own idea to obtain a secure home for herself during her last years. Contrary to the above, testimony was offered that although Mrs. Miller was a strong minded woman, she had always been deficient of any business sense; that her heavy drinking through the years had rapidly advanced her natural senility; that at the time of the conveyances, the surface of the ranch property was reasonably worth more than $400,000.00 and that the mineral estate returned an annual income of over $40,000.00.

Under these circumstances, the trial Court was justified in making the implied findings that a fiduciary relationship existed and that highly advantageous benefits were gained by the Appellants. Since equity then cast upon the profiting fiduciaries the burden of showing the fairness of the transactions, the trial Court was then justified in finding that the presumption of unfairness was unrebutted. *Texas Bank and Trust Company v. Moore*, 595 S.W.2d 502 (Tex.1980); *Archer v. Griffith*, 390 S.W.2d 735 (Tex.1964).

Considering only the evidence and inferences arising which support the trial Court's implied findings, the Appellants' legal sufficiency attack on the fiduciary findings are

overruled. Further, after considering all the evidence, the factual sufficiency attacks are also overruled.

 Appellants have a point which asserts alleged error of the trial Court in permitting the deposition of Mrs. Miller to be read into evidence since she was declared incompetent on November 28, 1978, and her deposition was taken on January 11, 1979. Waiver is presented since no objection was made to the reading of the deposition. Further, there is no rule which absolutely prohibits the *non compos* as a witness. The trial Judge rightfully should have heard the testimony to enable him to make a determination as to her capacity to recollect and narrate the events in question. 1 Ray, Texas Law of Evidence secs. 273, 274 Texas Practice (3d ed. 1980). The trial Court never made a ruling on the admissibility of the evidence, and if it were inadmissible, we presume that it was not considered. 5 Tex. Jur.3d sec. 631 (1980).

A series of points are presented which complain of the sufficiency of the evidence concerning coercion, threats, duress, fraud, undue influence and the alleged incompetency of Mrs. Miller in executing the instruments. Since the evidence was sufficient to sustain the implied finding of the trial Court that the instruments could be set aside because of the fiduciary relationship and the advantage thereafter taken, these points become immaterial and are overruled.

We have considered and overruled all of the Appellants' points, and the judgment of the trial Court is affirmed.