Virginia Lou Wilkinson MONTGOM-
ERY, et al., Petitioners,

v.

Virginia McEntire KENNEDY, et
al., Respondents.

No. C–2190.

Supreme Court of Texas.

April 18, 1984.

Rehearing Denied June 6, 1984.

Porter & Clements, J. Eugene Clements and Henri-Ann Nortman, Houston, for petitioners.

Vinson & Elkins, John B. Holstead and Paul D. Clote, Shrader & York, Houston, for respondents.

ROBERTSON, Justice.

Virginia Lou Wilkinson Montgomery and her children sued Jack B. Wilkinson, Jr. and Virginia McEntire Kennedy in a bill of review to set aside a prior agreed judgment. The trial court rendered summary judgment for defendants. The court of appeals affirmed, holding plaintiffs' evidence of fraud raised at most an issue of *intrinsic* fraud, not sufficient to justify a bill of review. 651 S.W.2d 814. We reverse the judgments of the courts below and remand the cause to the trial court.

Defendants' motion for summary judgment expressly set forth a number of alternative contentions. Their primary assertion was that their failure to disclose material facts as fiduciaries was intrinsic fraud and afforded no basis for equitable bill of review relief. Defendants also set forth several affirmative defenses, the primary one being estoppel because of acceptance of benefits under the prior judgment. Petitioners answered with a detailed reply contesting the conclusive establishment of each issue in the motion. The summary judgment record produced by the motion and reply is voluminous and includes over 15 depositions and transcriptions of prior trial testimony.

The standards for review of summary judgment evidence are well established. Defendants moving for summary judgment must expressly present and con-

clusively prove all essential elements of their defense as a matter of law; there can be no genuine issues of material fact. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movants will be taken as true. *Cowden v. Bell*, 157 Tex. 44, 46, 300 S.W.2d 286, 287 (1957). Every reasonable inference from the evidence must be indulged in favor of the non-movants and any doubts resolved in their favor. *Hudnall v. Tyler Bank & Trust Co.*, 458 S.W.2d 183, 185 (Tex.1970).

This is a family dispute. Virginia Lou is the sister of Jack B. Wilkinson, Jr. and the daughter of Virginia McEntire Kennedy. Virginia Lou's father (Jack Sr.) died in 1969. He left a substantial estate. The father's will named her brother and her mother as co-independent executors and as trustees of the trusts to be created under it. The will directed that one fourth of the residuary estate be placed in a trust with Virginia Lou as life beneficiary. Virginia Lou's children eventually were to receive whatever remained of the corpus of the trust. The will also provided some significant specific bequests to Virginia Lou, particularly twenty percent of the stock of Wilkinson Realty Company. The principal asset of Wilkinson Realty was the Wilco Building in Midland, Texas.

Their mother, Virginia McEntire Kennedy, delegated most of the management of the estate to Jack Jr. She had remarried and moved to Burnet, Texas. By 1974 Jack Jr. had not funded the testamentary trusts. Because the Wilco Building was under a disadvantageous long-term lease that made the company's cash flow negative, Wilkinson Realty provided no income to Virginia Lou. Virginia Lou also received no income from her father's estate. She complained bitterly about her exclusion from family income, and threatened litigation. Thereafter the family members began dealing with each other only through their attorneys.

Virginia Lou's attorney sought an amicable solution to the problem. He approached Jack Jr.'s attorneys to obtain a cash settlement in lieu of litigation. Both sides viewed the negotiations as amicable, to avoid litigation. There were no formal discovery procedures, but Virginia Lou's attorney was given on his request access to documents from the estate's files in Jack Jr.'s office.

In September of 1974 Virginia Lou's attorney with several expert advisors visited Jack Jr.'s office. Jack Jr. did not disclose that there were new assets and dealings for the estate. Jack Jr. was not present for much of the meeting, but he left instructions through his attorneys, accountants, and office employees. He did not give Virginia Lou's attorney and advisors all the estate's files for complete and unsupervised inspection. If the attorney or advisors asked for a specific class of documents, he provided them, but through his attorneys Jack Jr. declined to volunteer information other than on request.

One request was for balance sheets and income statements. The statements provided were not current, although they were represented to be the most current. The income statement included net bonuses from oil and gas leases, but did not segregate the bonuses as to leases to disclose specifically any new leases. The advisors made copies of the materials they deemed relevant and used them to define the estate's assets. The subsequent settlement negotiations involved reconciling the two sides' differing valuations of the estate's assets.

The negotiations eventually produced a compromise figure of $350,000 for Virginia Lou and her children. At the time of the negotiations, all three of Virginia Lou's children were minors. Attorneys for her brother and mother represented to Virginia Lou that a court proceeding had to be brought to make the settlement binding on the minor children. The brother and the mother filed the "friendly" suit to approve the settlement, and their attorneys drew up

all the papers for the proceeding, including a counterclaim for Virginia Lou and her children alleging the wrongful handling of the estate and trust assets. The settlement was incorporated in an agreed judgment.

The hearing for approval of the settlement was set for December 30, 1974. For personal reasons Virginia Lou's attorney was unable to attend on that date, so he sent an associate. Virginia Lou refused to proceed with the hearing because she was dissatisfied with having a different attorney present and because she had some additional concerns about the valuation placed on her share of the estate.

One of the main assets of the estate was Sterling County ranch land that had potential for oil and gas production. After she refused to proceed with the December settlement hearing, Virginia Lou consulted a geologist, a personal friend, to confirm that the valuation placed on the property by her attorneys was reasonable. After receiving confirmation, Virginia Lou in January 1975 proceeded with the settlement hearing with her attorney there personally. She testified that she believed the settlement was fair and just to herself and to her children. The trial judge signed the agreed judgment approving the compromise settlement. The settlement had been expressly conditioned on court approval and a court ruling that the testamentary trust could be rescinded.

Unknown to Virginia Lou, her attorney or her children, her brother had failed to disclose the existence of an oil and gas lease on the Sterling County property. Her attorney had relied upon the disclosures made by Jack Jr. and the attorney had not been apprised of the lease. The lease had been executed in May 1974, but had not been recorded until after the date in September 1974 when Virginia Lou's attorney examined the records. In the period between the December hearing setting and the January hearing, the lessee had exercised an option leading to a second sizable bonus. Jack Jr. and his attorney also did not disclose these developments to Virginia Lou or her attorney. The estate's share of the cash bonuses amounted to about half of the total sum of the settlement. Jack Jr.'s excuse for not funding the trusts or providing support for Virginia Lou had always been that the estate was "cash poor."

Virginia Lou first suspected there was an undisclosed lease in the fall of 1975. The lessee had obtained production. The oil strike was a big news item in a Houston newspaper that Virginia Lou read. Despite her suspicions, Virginia Lou requested and accepted a payment of about $13,000 as part of the settlement, representing reimbursement for her increased income tax liability because of the settlement. The agreement had provided the estate was to reimburse her for this tax liability. She thereafter consulted new counsel, confirmed the non-disclosure, and with her children brought this suit.

■ It is fundamentally important that some finality be accorded to judgments, and bills of review seeking relief from otherwise final judgments are scrutinized by courts of equity "with extreme jealousy, and the grounds on which interference will be allowed are narrow and restricted." *Alexander v. Hagedorn*, 148 Tex. 565, 568–69, 226 S.W.2d 996, 998 (1950). While this court has always upheld the sanctity of final judgments, we have also always recognized that showing the former judgment was obtained by fraud will justify a bill of review to set it aside.

■ In relation to attacks on final judgments, fraud is classified as either extrinsic or intrinsic. Only extrinsic fraud will entitle petitioners to bill of review relief. *Alexander v. Hagedorn, Id.* at 574, 226 S.W.2d at 1001.

■ We have stated or expressly approved that extrinsic fraud is that fraud which denies a losing litigant the opportunity to fully litigate his rights or defenses upon trial. *Id.* Extrinsic fraud is "collateral" fraud in the sense that it must be collateral to the matter actually tried and not something which was actually or potentially in issue in the trial. *Crouch v. McGaw*, 134 Tex. 633, 639, 138 S.W.2d 94,

97 (1940). Extrinsic fraud is conduct that prevents a real trial upon the issues involved. *O'Meara v. O'Meara*, 181 S.W.2d 891, 893 (Tex.Civ.App.—San Antonio 1944, writ ref'd). Intrinsic fraud, on the other hand, is inherent in the matter considered and determined in the trial "where the fraudulent acts pertain to an issue involved in the original action, or where the acts constituting the fraud were, or could have been litigated therein." *Mills v. Baird*, 147 S.W.2d 312, 316 (Tex.Civ.App.—Austin 1941, writ ref'd).

■ Included in intrinsic fraud are fraudulent instruments, perjured testimony, or any matter which was actually presented to and considered by the trial court in rendering the judgment assailed. *Alexander v. Hagedorn*, 148 Tex. at 574, 226 S.W.2d at 1001. It is particularly well-established that the alleged perjury of a witness on a contested issue, which the opposing party had the opportunity to refute, is intrinsic fraud. *Crouch v. McGaw*, 134 Tex. at 637, 138 S.W.2d at 96.

Respondents argue that the value of the lease as part of Virginia Lou's share of the estate had to be at least "potentially" in issue in the former case. They also argue Jack Jr.'s failure to disclose was a substitute for perjury, and therefore intrinsic fraud. We reject this analysis.

■ As trustees of a trust and executors of an estate with Virginia Lou as a beneficiary, Jack Jr. and his mother owed Virginia Lou a fiduciary duty of full disclosure of all material facts known to them that might affect Virginia Lou's rights. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 508–09 (Tex.1980); *Baird v. Mills*, 119 S.W.2d 889, 892 (Tex.Civ.App.—Austin 1938, writ ref'd). The existence of strained relations between the parties did not lessen the fiduciary's duty of full and complete disclosure. *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d at 508; *Johnson v. Peckham*, 132 Tex. 148, 151–52, 120 S.W.2d 786, 788 (1938). The failure to disclose the existence of the lease concealed a material asset of the estate.

From the earliest times, this court has written that, in the context of a fiduciary's duty of full disclosure, in a suit to partition or divide assets, the fraudulent concealment of an asset is extrinsic fraud that will justify a court in setting aside its former judgment in an equitable proceeding. *Wright v. Wright*, 7 Tex. 526, 533–34 (1852). When the law provided that the husband was the manager of the estate of both spouses, this court wrote that because he was a special trustee for the wife, his fraudulent concealment of community assets, even if accompanied by actual perjury, was extrinsic fraud. *McMurray v. McMurray*, 67 Tex. 665, 4 S.W. 357 (1887). In both *Alexander v. Hagedorn* and *Crouch v. McGaw* we approved the statement in *State v. Wright*, 56 S.W.2d 950, 952 (Tex.Civ.App.—Austin 1933, no writ), which explained that in *McMurray* "the alleged fraud of the husband upon the wife was such, in conjunction with his perjured testimony, as to prevent her from presenting upon the trial her legal right in the premises."

■ By refusing application for writ of error in the two *Mills* cases [*Baird v. Mills*, 119 S.W.2d 889 (Tex.Civ.App.—Austin 1938, writ ref'd); *Mills v. Baird*, 147 S.W.2d 312 (Tex.Civ.App.—Austin 1941, writ ref'd)], this court expressly approved "the principles of law declared in the opinion(s) ... in all respects." Tex.R.Civ.P. 483. Those decisions should have made clear that the concealment of a material fact by a fiduciary charged with the duty of full disclosure is extrinsic fraud. *See* 147 S.W.2d at 316–17; *see also Blackman v. Blackman*, 128 S.W.2d 433, 440–41 (Tex. Civ.App.—Fort Worth 1939, writ dism'd judgmt. corr.) (former temporary administrator breached fiduciary duty to disclose and committed extrinsic fraud). A fiduciary's concealment of material facts, used to induce an agreed or uncontested judgment, which prevents a party from presenting at trial his legal right, is extrinsic fraud.

■ That is not to say litigation with a fiduciary never has an end. Where there is no effective concealment by the alleged

fraud, as where a bill of review petitioner's prior pleadings show the alleged specific fraudulent acts were known and *in issue* in the prior suit, the fraud is intrinsic. *O'Meara v. O'Meara*, 181 S.W.2d 891 (Tex. Civ.App.—San Antonio 1944, writ ref'd). Similarly, when the allegedly fraudulent act constituted an issue in the action in which the judgment was rendered, the fraud is intrinsic. *Kelly v. Wright*, 144 Tex. 114, 119, 188 S.W.2d 983, 985–86 (1945); *Garcia v. Ramos*, 208 S.W.2d 111, 112 (Tex.Civ.App.—San Antonio 1948, writ ref'd). The controlling question is always whether the alleged fraud prevented the party from knowing about and presenting his legal rights at trial.

Respondents argue they are entitled to affirmance of their summary judgment because Virginia Lou knowingly accepted some benefits of the agreed judgment (the $13,000 tax liability reimbursement) after knowledge of the fraud. Assuming the estoppel doctrine may apply, we cannot agree that this summary judgment record establishes the affirmative defense. The record does not establish as a matter of law knowledge of the fraud at the time Virginia Lou accepted the payment. This type of estoppel requires acceptance "knowing the facts." *Dunham v. Randall & Chambers Co.*, 11 Tex.Civ.App. 268, 32 S.W. 720 (1895, writ ref'd), *cited with approval in Hopkins v. City of Dallas*, 106 S.W.2d 783 (Tex.Civ.App.—Fort Worth 1937, writ ref'd). An exception exists to the estoppel rule when the complaining party is at least entitled to the amount granted under the judgment, so that the attack on the judgment involves only the right to a further recovery. *Carle v. Carle*, 149 Tex. 469, 472, 234 S.W.2d 1002, 1004 (1950). Petitioners raised evidence that only a further recovery is possible, and respondents have not established the possibility of a lesser recovery as a matter of law. At any rate, the asserted estoppel would not operate against Virginia Lou's children, all of whom were minors at the time the transactions occurred.

We hold that defendants failed to establish their affirmative defenses as a matter of law. There is summary judgment evidence of fraud. For summary judgment purposes defendants admitted fraud but contended it was intrinsic. Because we hold the alleged fraud was extrinsic, we reverse the judgment of the court of appeals and remand the cause to the trial court.

RAY, Justice, dissenting.

I respectfully dissent. The court correctly states that only a showing of extrinsic fraud will entitle a litigant to bill of review relief. *Alexander v. Hagedorn*, 148 Tex. 565, 226 S.W.2d 996, 1001 (1950). Extrinsic fraud is fraud that is collateral to the matter tried and does not pertain to an issue which was, or could have been, litigated in the original action. *Crouch v. McGaw*, 134 Tex. 633, 138 S.W.2d 94, 97 (1940); *Raney v. Mack*, 504 S.W.2d 527, 533 (Tex.Civ.App.—Texarkana 1973, no writ). In the instant case, a significant issue in the original action was how much Montgomery should be paid when the trust was terminated. Having the benefit of advice from her counsel, an experienced certified public accountant, and a geologist solicited to ascertain mineral interest values, Montgomery agreed to a figure of $350,000. The trial court rendered judgment accordingly. Clearly, the fraud of which Montgomery now complains—the failure of the trustees to disclose a mineral lease—pertains to the issue of how much Montgomery should have been paid when the trust was terminated. This issue was before the court in the original action. Thus, the fraud alleged by Montgomery is not extrinsic fraud, and she is not entitled to bill of review relief.

I do not believe that the authorities cited in the court's opinion establish the iron-clad rule that the concealment of a material fact by a fiduciary constitutes extrinsic fraud as a matter of law. In my view, this rule is inconsistent with the definition of extrinsic fraud set forth in the previous opinions of this court and militates against the policy of the finality of judgments.

I would affirm the judgments of the courts below.