John Dee ANDREWS, Appellant,

v.

Cynthia Mae ANDREWS, Appellee.

No. 13981.

Court of Appeals of Texas,
Austin.

Aug. 22, 1984.

Rehearing Denied Sept. 19, 1984.

J. Terry Weeks, Weeks, Chapman & Buford, Austin, for appellant.

James M. Vogt, Coffee, Goldston & Vogt, Austin, for appellee.

Before SHANNON, EARL W. SMITH and GAMMAGE, JJ.

## OPINION

SHANNON, Justice.

Appellee Cynthia Mae Andrews filed suit in the district court of Travis County seeking a divorce from appellant John Dee Andrews. By her suit, appellee sought appointment as managing conservator of their daughter, Jamie Dee Andrews, an infant, an order requiring appellant to make child support payments, and a division of the community property.

After trial to the court, judgment was rendered granting the divorce. The district court appointed Cynthia Andrews managing conservator of the child, ordered John Andrews to make child support payments of $510.00 each month, and divided the community estate. Upon request, the district court filed findings of fact and conclusions of law.

John Andrews does not fault that part of the judgment granting the divorce, naming Cynthia Mae Andrews the managing conservator of the child, or setting the child support. Rather, he challenges that part of the judgment which disposes of the parties' property.

John Andrews claimed as his separate property the house at 2800 Hubbard Circle in Austin which the parties made their residence. The undisputed community estate consisted of a greyhound dog, two automobiles, interests in employee retirement plans, household furnishings and fixtures, life insurance, bank balances and savings and loan deposits, a mineral lease, a modest stock account, and real estate located at 5010 Powder River Drive. John Andrews also held title to several other parcels of real estate in Travis County. In some of these parcels, Andrews held title with his mother, Myrtle Andrews.

Among other things, the judgment of the district court imposed a constructive trust for the benefit of Cynthia Mae Andrews for a one-half interest in the real estate comprising the residence of the parties located at 2800 Hubbard Circle. The judgment also ordered John Andrews to execute a promissory note payable to his former wife in the sum of $45,000.00, the note being secured by a lien against certain personal and real estate awarded in the judgment to John Andrews as his separate property.

John Andrews complains initially of the imposition by the district court of the constructive trust for the benefit of his former wife of a one-half undivided interest in the parties' residence at 2800 Hubbard Circle. He insists that a constructive trust was not warranted because Cynthia Mae did not contribute to the down-payment for the purchase of the residence. Appellant maintains that the Hubbard Circle residence is his separate property and, at best, the community estate has only the right to reimbursement for sums spent upon the improvement of the residence.

In the autumn of 1975, the parties were living together in Dallas and were engaged to be married. They decided to move to Austin and to jointly buy a house. The parties made numerous trips to Austin, investigating the housing market, and ultimately decided to purchase the property at 2800 Hubbard Circle. John Andrews signed an offer to purchase the residence.

The parties agreed between themselves that they would buy the residence jointly, use the property as their mutual marital homestead, borrow funds sufficient to purchase said property, using their collective borrowing power and credit reputation, and jointly repay such indebtedness from funds they would later earn.

To assist in their qualification for the necessary long-term financing of the property, Cynthia Mae Andrews signed a loan application and delivered such application to John Andrews, at his request, for delivery to the lender. However, John Andrews delivered a different loan application for Cynthia Mae Andrews, typed but not signed, to the lender. The initial docu-

ments relating to the purchase of the residence reflected the names of Cynthia Mae Calvert and John Andrews as prospective co-borrowers and co-owners. Cynthia Mae did not pay any of the escrow money tendered the seller with the contract to purchase.

Before the closing of the purchase of the residence, appellant unilaterally informed the closing attorney that Cynthia Mae's name was to be stricken from such documents, and, as a result, title issued solely in the name of John Andrews. Only John Andrews signed the note and deed of trust. Appellant Andrews did not inform Cynthia of the changes directed to be made to the closing papers but did tell her that it was unnecessary for her to attend the closing, on March 2, 1976.

Upon disputed facts, the district court found that John Andrews knew that Cynthia Mae Andrews intended to be an equal, co-owner of the residence, and knew that she intended to share the cost of its debt service, maintenance and all improvements, as their marital abode. Such intent was formed before the ceremonial marriage, and long after the time when they had agreed to marry. The sale was closed on March 2, 1976, at a time when Cynthia was away from Austin.

On March 20, 1976, the parties were ceremonially married, and continued their cohabitation at 2800 Hubbard Circle, and thereafter treated it as their legal residence and it was, in fact, their domicile until separation. All sums borrowed to make the down-payment on the subject property were repaid, after their marriage, to the various lenders from community earnings of the parties.

After the parties' marriage, they jointly improved and substantially enhanced the value of 2800 Hubbard Circle with community funds and significant community labor, and in all respects treated the property as equal owners. In 1980, Cynthia Andrews, for the first time, learned that the deed of conveyance to the residence reflected only the name of her husband as grantee.

The district court concluded that John Andrews, as constructive trustee, held an undivided one-half interest in the 2800 Hubbard Circle property for the benefit of Cynthia Mae Andrews. The court reasoned that the constructive trust arose as a result of John Andrews' deliberate violation of their confidential relationship, which was likewise a fiduciary relationship, in direct fraud of Cynthia Mae Andrews' rights in the property. As a result, the district court concluded that the parties held equal undivided interests in the Hubbard Circle property as tenants-in-common.

In support of its imposition of the constructive trust, the district court reasoned that to fail to impose a constructive trust would result in an unconscionable and unjust enrichment of the husband's separate estate. The imposition of such trust and the resulting co-tenancy seemed to the district court to be the only fair and accurate way to evaluate the respective contributions of time, toil, labor and enhanced value of the residence. Any attempt to otherwise place a measure of reimbursement would be unnecessarily speculative and grounded on incomplete or disputed evidence. The district court concluded that the imposition of the constructive trust was not a divestiture of title, but instead an enforcement of the parties' agreement, made within the confidential and fiduciary relationship that existed prior to ceremonial marriage.

A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired under such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 122 N.E. 378, 380 (1919).

Unlike an express trust, a constructive trust does not arise because of a manifestation of intention to create it; to the contrary, it is imposed by law because the person holding title to the property would profit by a wrong or would be unjustly

enriched if he were permitted to retain title. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960).

[A constructive trust] is unlike other trusts, but equity raised it up in the name of good conscience, fair dealing, honesty, and good morals. *Omohundro v. Matthews*, 161 Tex. 367, 341 S.W.2d 401, 405 (1960). "A constructive trust is the formula through which the conscience of equity finds expression." *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919). Equity provides the idea of constructive trusts as a tool to "frustrate skullduggery," 4 R. Powell, Real Property § 593 (1949), even though that kind of a trust is also grounded upon elusive principles. Such a trust is purely a creature of equity. Its form ·is practically without limit, and its existence depends upon the circumstances. *Simmons v. Wilson*, 216 S.W.2d 847, 849 (Tex.Civ. App.—Waco 1949, no writ).

*Bocanegra v. Aetna Life Ins. Co.*, 605 S.W.2d 848, 851 (Tex.1980).

■ The district court correctly concluded that a fiduciary relationship existed. In *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980), the Court stated: "the term [fiduciary] includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations." (citing *Kinzbach Tool Co., Inc. v. Corbett-Wallace Corp.*, 138 Tex. 565, 160 S.W.2d 509, 513 (1942)). *See also Turner v. Miller*, 618 S.W.2d 85, 87 (Tex.Civ.App.1981, writ ref'd n.r.e.) (close, family-like relationship between elderly woman and a younger couple was a fiduciary relationship under facts); *Adickes v. Andreoli*, 600 S.W.2d 939, 946 (Tex.Civ.App.1980, no writ) (Where Adickes and Andreoli were close personal friends and Adickes agreed to assist Andreoli in locating suitable real estate, and where Adickes knew that Andreoli relied on his knowledge and experience, a fiduciary relationship existed). At the time of the transactions in the case on appeal, the parties had been seeing each other for approximately seven years; they were living together and were engaged to be married. The parties agreed to purchase the Hubbard Circle house jointly for use as their marital residence.

■ John Andrews argues that because Cynthia Mae Andrews did not contribute to the down-payment for the purchase of the residence, she cannot be the beneficiary of a resulting trust. This may be true. Nevertheless, this Court does not understand that appellee was required to prove a contribution to the down-payment for the purchase of the house as a condition for the imposition of a *constructive trust* as distinguished from a resulting trust. *Tolle v. Sawtelle*, 246 S.W.2d 916, 918 (Tex.Civ. App.1952, writ ref'd).

By several points of error, the former husband advances the premise that the district court erred in awarding a judgment and note to the former wife in the sum of $45,000.00 since such was supported by no evidence or insufficient evidence. The probable value of the items of property assigned in the judgment to John Andrews as his separate property is about $33,-570.00. John Andrews argues that there is no factual or legal justification for the eleven-thousand dollar disparity between that sum and the $45,000.00 note.

In support of his argument the former husband reminds this Court that the district court made no findings which would support the unequal distribution as "just and right, having due regard for the rights of each party....", Tex.Fam.Code Ann. § 3.63 (Supp.1984), such as disparities in the earning capacities and incomes of the parties, education, relative health, relative financial conditions and obligations, ages, size of the separate estates, and the nature of the property. *See Murff v. Murff*, 615 S.W.2d 696 (Tex.1981).

Conclusion of law four, at first blush, seems to furnish the basis for the court's award of the $45,000.00 note to Cynthia Mae. That conclusion provides as follows:

## IV.

As to the *bulk of the community estate,* owned in co-tenancy with [John An-

drews'] mother, whether in trust, or held in her name, or jointly with her, a manifest injustice could occur to [Cynthia Mae Andrews], to be substituted as co-tenant, with a hostile co-tenant. Accordingly, in lieu thereof, [Cynthia Mae] should have reimbursement, as requested, by way of a note to be executed by [John], as an equitable portion of the net community estate, otherwise awarded in specie to [John], together with the chattels and the incidents of her employment which were set aside to her in the Court's judgment. (Emphasis added).

It would appear from conclusion four that the court had determined that the community estate owned certain parcels of real estate as a co-tenant with John Andrews' mother and that the $45,000.00 note represented, at least in part, the value of Cynthia Mae's community interest in that real estate. However, in later filed conclusions of law, the court makes plain that no such meaning may be drawn from conclusion of law four, and in the later filed conclusions of law the court specifically determines that the mentioned parcels of real estate are *neither community* nor *separate* property of the parties. The district court must have concluded, but did not so state, that John Andrews made a gift to his mother of the community funds employed in the purchase of the parcels of real estate.

On the other hand, and in defense of the judgment, Cynthia Mae Andrews suggests that the unequal distribution of the community was warranted by her former husband's "waste, mismanagement, or outright conversion of community funds." As authority for such proposition, appellee relies upon *Grothe v. Grothe*, 590 S.W.2d 238 (Tex.Civ.App.1979, no writ) and *Reaney v. Reaney*, 505 S.W.2d 338 (Tex.Civ.App.1974, no writ).

In *Grothe v. Grothe, supra,* the judgment recited that the former spouse wrongfully and willfully converted substantial amounts of community funds for his own personal use with the intention of depriving the former wife of her community interest in those funds. The former spouse failed to challenge that finding. In the absence of an attack upon the finding of conversion of community funds, this Court held that the finding of conversion justified an unequal distribution of the remaining community estate. In *Reaney v. Reaney, supra,* the former husband admitted that he "squandered" $53,000.00 in community funds. He lost some of the money gambling, he gave some of it away, and he spent some of the money "very foolishly." As this Court understands *Reaney*, the husband's profligacy must have been viewed by the Court as a fraud on the community estate.

There are no facts or findings in this appeal which are similar to those in either *Grothe* or *Reaney*. Without dispute John Andrews made some poor investments of community funds. Also without doubt, he used community income to purchase with his mother some of the parcels of real estate. Cynthia Mae knew that her husband made payments on notes executed in such transactions. In fact, in at least one of the real estate transactions she wrote many of the checks for the monthly payments. Neither *Grothe* nor *Reaney* is authority for the proposition that a spouse's good faith, but unwise, investment of community funds resulting in losses to the community estate justifies an unequal distribution of remaining community property. Absent a fraud on the community, the court may not order reimbursement for gifts of community property made during the marriage to a stranger. *See* Geer, *Gifts in Fraud of the Rights of the Wife,* 26 Baylor L.Rev. 85 (1974). There are no findings by the district court that Andrews' investment of community funds in the purchase of the real estate was tantamount to a fraud on the community.

As this Court is unable to discover a factual or legal justification for the disparity in the division of the community property, we grant appellant's points of error six, seven and eight. As the district court erred in the division of the community property of the parties, this Court will reverse that part of the judgment and re-

mand that part of the cause for a division of the community property. That part of the judgment disposing of the Hubbard Circle property as separate property of the parties is affirmed. *McKnight v. McKnight,* 543 S.W.2d 863 (Tex.1976).