TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00626-CV






Michael E. Freeman, Appellant




v.




Julia L. Brown Freeman, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 146TH JUDICIAL DISTRICT


NO. 159,160-B, HONORABLE RICK MORRIS, JUDGE PRESIDING 







 Appellant, Michael E. Freeman ("Michael"), and appellee, Julia L. Brown Freeman
("Julia"), were divorced in Bell County, Texas in 1993. The divorce decree apparently recited,
inter alia, that one child, Jillian Michaelle Freeman ("Jillian"), was born of their marriage. (1) In
1996, Michael petitioned the trial court for a bill of review, complaining that the divorce decree
erroneously established that he was Jillian's father when in fact she had been fathered by another. 
The trial court denied Michael's petition, concluding that he failed to show that the divorce decree
was entered as a result of "fraud, accident or wrongful act of [Julia]." (2) 

 On appeal, Michael asserts that: (1) due to Julia's fraudulent concealment of
Jillian's true father, he was prevented from presenting a meritorious defense to the uncontested
determination of paternity, such defense being unknown to him at the time of entry of the original
divorce decree; and (2) as his bill of review proceeding constitutes a direct attack on the original
divorce proceeding, it is not barred by section 160.007(a) of the Texas Family Code. See Tex.
Fam. Code Ann. § 160.007(a) (West 1996). We will affirm the trial court's judgment.


BACKGROUND

 In 1972, Michael and Julia were married. During the marriage, Jillian was born. 
When Michael and Julia later divorced, the divorce decree apparently recited that Jillian was born
of the marriage and provided for her custody and support. Following the divorce, Michael and
Julia would from time to time argue over support issues. Michael alleges that during one such
argument in September 1995, Julia remarked, "It's not your child anyway." Julia denies both the
conversation and the remark. During their next period of visitation in March 1996, Michael had
DNA tests administered to both himself and Jillian. No tests were conducted on Julia. Michael
claims that the tests conclusively establish that he is not the biological father of Jillian. Julia
denies that she ever had an adulterous affair during her marriage to Michael, contends that Jillian
is in fact Michael's child, and asserts that the DNA test results are false.

 After conducting a hearing, the trial court overruled and denied the petition for bill
of review, concluding that Michael did not establish that the divorce decree was rendered as a
result of fraud, accident or wrongful act of Julia. (3)


DISCUSSION

 A bill of review is an independent action of an equitable nature brought by a party
to a former action seeking to set aside a judgment that is no longer appealable. See State v. 1985
Chevrolet Pickup Truck, 778 S.W.2d 463, 464 (Tex. 1989). To successfully invoke a bill of
review proceeding to set aside a final judgment, a complainant must demonstrate that, through no
fault or negligence of his own, he has been prevented by fraud, accident, or mistake from making
a meritorious claim or defense. See Alexander v. Hagedorn, 226 S.W.2d 996, 998 (Tex. 1950). 
In the present case, Michael argues that he is entitled to attack the original divorce decree by a bill
of review because the decree was rendered as a result of fraud. Specifically, Michael alleges that
Julia fraudulently concealed that he is not the biological father of Jillian, and that this deception
prevented him from bringing a meritorious defense regarding paternity in the original divorce
proceeding. (4)

 "It is fundamentally important that some finality be accorded to judgments" to avoid
attempts by losing parties to re-litigate their controversy. Montgomery v. Kennedy, 669 S.W.2d
309, 312 (Tex. 1984); State v. Wright, 56 S.W.2d 950, 952 (Tex. Civ. App.--Austin 1933, no
writ). As a result, "bills of review seeking relief from otherwise final judgments are scrutinized
by courts of equity 'with extreme jealousy, and the grounds on which interference will be allowed
are narrow and restricted.'" Montgomery, 669 S.W.2d at 312 (quoting Alexander, 226 S.W.2d
at 998).

 A showing that a former judgment was obtained by fraud may justify a bill of
review to set it aside. See id. Fraud, as it applies to attacks on final judgments, is classified as
either extrinsic or intrinsic. See Alexander, 226 S.W.2d at 1001. Only extrinsic fraud will
support a bill of review and entitle a petitioner to relief. See id.

 Extrinsic fraud is generally defined as fraud that denies a losing litigant the
opportunity to fully litigate his rights or defenses at trial. See Montgomery, 669 S.W.2d at 312. 
Extrinsic fraud is collateral in nature. See id.; Mills v. Baird, 147 S.W.2d 312, 316 (Tex. Civ.
App.--Austin 1941, writ ref'd). As such, extrinsic fraud is also referred to as wrongful conduct
that is practiced outside of an adversary trial which operates upon matters pertaining not to the
judgment itself, but to the manner in which it is procured, so that there is not a fair submission
of the controversy. See Alexander, 226 S.W.2d at 1002; Mills, 147 S.W.2d at 316-17. Extrinsic
fraud has been found in instances where an opponent, by fraud or deception, keeps a party away
from court, makes a false promise of a compromise, or denies a party knowledge of the suit. See
Alexander, 226 S.W.2d at 1001-02.

 Fraud is intrinsic, on the other hand, when "the fraudulent acts pertain to an issue
involved in the original action, or where the acts constituting the fraud were, or could have been
litigated therein." Montgomery, 669 S.W.2d at 313 (citing Mills, 147 S.W.2d at 316). In
essence, intrinsic fraud relates to the matters which were presented to and considered by the trial
court in rendering the judgment assailed. Montgomery, 669 S.W.2d at 313. The term intrinsic
fraud includes "such matters as fraudulent instruments [and] perjured testimony" because in such
situations the opposing party had the opportunity to refute the evidence. Alexander, 226 S.W.2d
at 1001; see also, e.g., Bankston v. Bankston, 251 S.W.2d 768, 773 (Tex. Civ. App.--Dallas
1952, writ dism'd) (auditor's report given to appellant at trial that did not mention market value
was intrinsic fraud because it bore on actual or potential matters in issue at the former trial). 
Intrinsic fraud "will not support a bill of review, for each party must guard against adverse
findings upon issues directly presented." Tice v. City of Pasadena, 767 S.W.2d 700, 702 (Tex.
1989).

 Here, Michael contends that Julia committed fraud by concealing the identity of
Jillian's biological father. He further argues that this deception constitutes extrinsic fraud because
the issue of paternity was never considered by the trial court and he was never aware of the
existence of the issue until shortly before filing his petition for bill of review. However, the
parties agree that the original divorce decree established Michael as Jillian's father. Thus,
paternity was a matter that was "considered and determined" in the divorce proceeding, and Julia's
alleged fraud, if any, is not extrinsic because it is not collateral to the matter that was tried. The
supposed fraud relates directly to paternity, which was a subject before the court in the original
proceeding. We find that Julia's alleged fraud was intrinsic and does not give rise to a bill of
review. (5)

 Michael further asserts that even if Julia's fraud is intrinsic in nature, this case falls
under an "exception" to the general rule requiring the existence of extrinsic fraud. While not
defining it as an "exception," the supreme court has held that a fiduciary relationship between the
parties may support facts which establish extrinsic fraud:


From earliest times, this court has written that, in the context of a fiduciary's duty
to full disclosure, in a suit to partition or divide assets, the fraudulent concealment
of an asset is extrinsic fraud that will justify a court in setting aside its former
judgment in an equitable proceeding.



Montgomery, 669 S.W.2d at 313 (citing Wright v. Wright, 7 Tex. 526, 533-534 (1852)); see also
McMurry v. McMurry, 4 S.W. 357, 361 (Tex. 1887) (perjured testimony of husband in a divorce
proceeding, coupled with concealment from wife of the true nature and extent of the community
property, was extrinsic fraud); Kessler v. Kessler, 693 S.W.2d 522, 525 (Tex. App.--Corpus
Christi 1985, writ ref'd n.r.e.) (extrinsic fraud existed where husband deposited community
property funds in a different bank account and omitted the deposit from the inventory during the
divorce).

 This Court has likewise recognized that a breach of a fiduciary duty can give rise
to a finding of extrinsic fraud. In the Mills cases, we found that the administrator of an estate
engaged in extrinsic fraud when he concealed information from the beneficiary of that estate. 
Mills, 147 S.W.2d at 317; Baird v. Mills, 119 S.W.2d 889, 891 (Tex. Civ. App.--Austin 1938,
writ ref'd). "[The Mills] decisions should have made clear that the concealment of a material fact
by a fiduciary charged with a duty of disclosure is extrinsic fraud." Montgomery, 669 S.W.2d
at 313.

 Michael asserts that the marital relationship as a whole is a fiduciary relationship
between husband and wife and asks us to hold that fraud committed by one upon the other is in
all instances a breach of that spouse's fiduciary duty. This we decline to do.

 With regard to the marital relationship, it is well established that a husband and wife
have a fiduciary relationship when dealing with community property. See Connell v. Connell, 889
S.W.2d 534, 541 (Tex. App.--San Antonio 1994, writ denied). A trust relationship exists when
a spouse controls a portion of the couple's community property, when partitioning community
assets, or when a spouse disposes of the other spouse's community property. See, e.g., id.
(disposing of community property); Matthews v. Matthews, 725 S.W.2d 275, 279 (Tex.
App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.) (partitioning title to assets); Carnes v. Meador,
533 S.W.2d 365, 370 (Tex. Civ. App.--Dallas 1975, writ ref'd n.r.e.) (controlling community
property). Moreover, the relationship of parents to their children is a fiduciary one. See S.V. v.
R.V., 933 S.W.2d 1, 8 (Tex. 1996); Consolidated Gas & Equip. Co. v. Thompson, 405 S.W.2d
333, 337 (Tex. 1966).

 However, the existence of a family relationship does not alone establish a fiduciary
relationship. See Texas Bank & Trust Co. v. Moore, 595 S.W.2d 502, 508 (Tex. 1980) (noting
that the fact that the parties were related did not, standing alone, establish a fiduciary relationship);
Tuttlebee v. Tuttlebee, 702 S.W.2d 253, 256 (Tex. App.--Corpus Christi 1985, no writ) (finding
that a family relationship does not establish a fiduciary relationship). A fiduciary relationship is
a formal, technical relationship of confidence and trust that imposes upon the fiduciary greater
duties as a matter of law. Central Sav. & Loan Ass'n v. Stemmons Northwest Bank, N.A., 848
S.W.2d 232, 243 (Tex. App.--Dallas 1992, no writ). Generally, this relationship arises only
when family members involve themselves in financial transactions with one another. See Texas
Bank & Trust Co., 595 S.W.2d at 508-09 (accepting transfers by aunt as joint tenant with
survivorship rights of her funds); Mills v. Gray, 210 S.W.2d 985, 988-89 (Tex. 1948) (agreeing
to reconvey property to mother); Cleaver v. Cleaver, 935 S.W.2d 491, 496-97 (Tex. App.--Tyler
1996, no writ) (acting as trustee for family trust); Hamblet v. Conveney, 714 S.W.2d 126, 129
(Tex. App.--Houston [1st Dist.] 1986, no writ) (signing a contract with niece's husband);
Tuttlebee, 702 S.W.2d at 256 (transferring property to brother-in-law); Andrews v. Andrews, 677
S.W.2d 171, 174 (Tex. App.--Austin 1984, no writ) (purchasing real estate with fiancée).

 The supreme court has observed that although "an informal relationship may give
rise to a fiduciary duty where one person trusts in and relies on another, whether the relationship
is a moral, social, domestic, or purely personal one. . . . not every relationship involving a high
degree of trust and confidence rises to the stature of a fiduciary relationship." Schlumberger Tech.
Corp. v. Swanson, 959 S.W.2d 171, 176-77 (Tex. 1997) (citations omitted). Such fiduciary duties
as may from time to time exist between a husband and wife in dealing with property have never
been expanded to impose such obligations on all aspects of married life and all communications
between spouses. Although it is undoubtedly true that a high level of subjective trust should exist
in a marriage, this general trust does not always give rise to the legal status of a fiduciary
relationship. If such were the law, both parties to a marriage would owe each other a fiduciary
duty at all times. Fiduciary relationships are extraordinary and are not to be created lightly or in
every instance where trust and confidence is expected. Finding that the institution of marriage
does not in and of itself create fiduciary duties between spouses, we reject Michael's assertion to
the contrary and find that his allegations of fraud give rise only to an argument of intrinsic fraud
and thus will not support a bill of review. Point of error one is overruled.

 In his second point of error, Michael asserts that his bill of review is not barred by
the Texas Family Code. See Tex. Fam. Code Ann. § 160.007(a) (West 1996). In light of our
holding in point of error one, it is not necessary for us to reach Michael's second point of error. (6) 


CONCLUSION


 Having overruled point of error one, we affirm the trial court's judgment denying 
Michael's petition for bill of review.



 

 Lee Yeakel, Justice


Before Chief Justice Aboussie, Justices Jones and Yeakel* 

Affirmed

Filed: December 3, 1998

Do Not Publish













* Before Lee Yeakel, former Chief Justice, Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).
1. Although the parties do not dispute that the divorce decree includes this information, the
original decree of divorce does not appear in the record.
2. The trial court also observed in his conclusions of law that section 160.007(a) of the Texas
Family Code bars suits to adjudicate paternity "if a final judgment has been rendered by a court
of competent jurisdiction." See Tex. Fam. Code Ann. § 160.007(a) (West 1996). However,
neither the trial court's conclusions nor his judgment reflect that this section was a basis for
denying the relief sought by Michael.
3. The court specifically observed: "Only the commission of extrinsic fraud will afford relief
to a bill for [sic] review complaint."
4. For the purposes of this discussion, we will presume that fraud was demonstrated in this
case. The record, however, reflects that fraud was disputed.
5. Amanda v. Montgomery, 877 S.W.2d 482 (Tex. App.--Houston [1st Dist.] 1994, no writ),
concerned a fact situation very similar to that found here. Although the ultimate determination
of the case was based on the fact that the law in existence at the time of the parties' original
divorce prevented a husband who was married and living with his wife from rebutting the marital
presumption of paternity of her children, Justice Hedges' concurrence contains a helpful discussion
regarding the question of paternity and fraud:


David's assertions are allegations of intrinsic fraud. He alleged that Amanda
concealed her knowledge of the identity of Paul's real biological father. This alleged
fraudulent act pertains to paternity, an issue involved in the original action. Paternity
was an issue in the divorce, whether or not the issue was actually contested. The fact
that the divorce action declares that David is Paul's father means that paternity is a
matter that was "considered and determined" in the divorce proceeding.


Amanda's alleged fraud could not be classified as extrinsic. It is not "collateral" to
the matter that was tried. Rather, it relates directly to paternity, a subject that was
actually an issue in the proceeding. It cannot, therefore, be extrinsic fraud.


Id. at 488 (Hedges, J., concurring) (emphasis in original).
6. To invoke the equitable powers of the trial court, the bill of review petitioner must first
prove to the fact finder that the prior judgment at issue was rendered as a result of fraud, accident
or wrongful act of the opposite party before the trial court can reach the substantive issues
underlying the bill of review itself. See State v. 1985 Chevrolet Pickup Truck
, 778 S.W.2d 463,
448 (Tex. 1989) (citing Baker v. Goldsmith, 582 S.W.2d 404, 408 (Tex. 1979)) (enunciating the
procedural steps necessary to be followed in a bill of review proceeding). As Michael has failed
to establish extrinsic fraud, we do not consider whether this bill of review proceeding is barred
by the Texas Family Code. See also comments supra note 2.




 

 Lee Yeakel, Justice


Before Chief Justice Aboussie, Justices Jones and Yeakel* 

Affirmed

Filed: December 3, 1998

Do Not Publish













* Before Lee Yeakel, former Chief Justice, Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).
1. Although the parties do not dispute that the divorce decree includes this information, the
original decree of divorce does not appear in the record.
2. The trial court also observed in his conclusions of law that section 160.007(a) of the Texas
Family Code bars suits to adjudicate paternity "if a final judgment has been rendered by a court
of competent jurisdiction." See Tex. Fam. Code Ann. § 160.007(a) (West 1996). However,
neither the trial court's conclusions nor his judgment reflect that this section was a basis for
denying the relief sought by Michael.