# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-00-00102-CV

**Lonnie E. Daniels, Jr., Appellant**

**v.**

**Botts Abstracting Company d/b/a Botts Title Company; American Title Insurance Company of Texas; Busch & Von Minden; Monroe Von Minden; Scott Lawrence Penn; Elizabeth Ana Penn; Roy Streger; Land Brokers, Inc.; Robert Ruckert; Harry C. Arthur; and Danny Gumm, Appellees**

**FROM THE DISTRICT COURT OF FAYETTE COUNTY, 155TH JUDICIAL DISTRICT NO. 99V-059, HONORABLE FRED A. MOORE, JUDGE PRESIDING**

Lonnie Daniels appeals following a summary judgment in favor of the appellees.[1] Daniels contends that summary judgment was improper because a fact issue existed regarding his claim of duress and that the judgment improperly required him to pay attorney's fees related to a previous lawsuit with exempt homestead proceeds. We will affirm the summary judgment.

---

[1] The appellees include all of the parties that were involved in any manner in the sale of Daniels's property. The appellees are Botts Abstract Company d/b/a Botts Title Company, American Title Insurance Company of Texas, Busch & Von Minden, Monroe Von Minden, Scott and Elizabeth Penn, Roy Streger, Land Brokers, Inc., Robert Ruckert, Harry C. Arthur., and Danny Gumm.

**Background**

On October 20, 1994, Daniels signed an earnest-money contract for sale of his house along with nine acres out of a fifty-nine-acre tract of land he owns in Fayette County to Scott and Elizabeth Penn. The contract provided that in the event a legal proceeding involving the property commenced before closing, the prevailing party was entitled to recover from the non-prevailing party all costs related to the proceeding and its attorney's fees. Apparently experiencing seller's remorse, Daniels attempted to rescind the contract. The Penns sued Daniels seeking damages and specific performance of the contract for sale of the property. Additionally, Land Brokers, Inc., the real-estate company that marketed the property, claimed damages for expenses as third-party plaintiffs and counter-defendants.

On May 2, 1996, following a bench trial, the district court rendered judgment in favor of the Penns and the other third-party plaintiffs and issued findings of fact and conclusions of law. Before the district court signed the final judgment, Daniels filed a Chapter 7 voluntary bankruptcy petition. *See* 11 U.S.C.A. §§ 301, 701-66 (West 1993 & Supp. 2000). The state district-court proceedings were automatically stayed. *See* 11 U.S.C.A. § 362(a)(1) (West 1993). The Penns petitioned the bankruptcy court and requested that it modify the stay in state district court and allow the specific-performance suit to proceed. The bankruptcy court granted the Penns' request and modified the stay. *See* 11 U.S.C.A § 362(d) (West 1993). On October 16, the state district court signed a final judgment in the Penns' specific-performance suit.

In its order, the district court declared that Daniels breached the contract for sale of the property and the Penns were entitled to specific performance of the contract. The district court also ordered the following: (1) Daniels pay the Penns' attorney's fees charged for preparing the

3

specific-performance suit and to pay the Penns' attorney's fees if Daniels appealed the case; (2) Daniels pay Land Brokers, Inc.'s attorney's fees, expenses, prejudgment and postjudgment interest; (3) the amounts Daniels owed to the Penns were to be credited as a down payment or prepayment on the contract; (4) the attorney's fees Daniels owed to Land Brokers were to be deducted from the balance of the purchase price and paid to Land Brokers; (5) Daniels and the Penns were to execute all necessary closing documents, and the closing was to occur within forty-five days of the signing of the judgment; (6) Daniels was to pay Botts Title for the owner's title insurance policy; (7) Daniels was to pay Land Brokers the commission as provided for in the earnest-money contract, prejudgment interest, and attorney's fees; (8) Daniels was to bear the cost of preparing the note, deed of trust, and general warranty deed; and (9) the purchaser's and buyer's statements were to reflect a credit or offset for amounts described above in addition to the usual and customary charges for fees and expenses of closing.

*After* the district court signed the judgment, Daniels, in his bankruptcy proceeding, moved to designate the property as his homestead; the Penns responded by filing a motion opposing the designation. On March 14, 1997, the bankruptcy court denied Daniels's request for a homestead exemption but ruled that he was entitled to "file a claim of exemption which . . . [was] consistent with the Texas Property Code as to any net proceeds from the sale which are allowed to [Daniels] pursuant to the state court's ruling."

On April 30, 1997, Daniels appealed to the federal district court complaining about the following bankruptcy-court decisions: (1) the September 13, 1996 decision to modify the stay and allow the state court to proceed with the specific-performance suit; (2) the March 14, 1997

4

decision to disallow a homestead exemption and allow an exemption only for the net proceeds from the sale; and (3) the March 14 decision to allow the Penns to set off costs and attorney's fees against the net proceeds from the sale of the property.

On September 30, 1998, the federal district court (1) affirmed the bankruptcy court's decision to modify the stay to allow the state district court to proceed; (2) affirmed the denial of the homestead exemption and ruled that when Daniels filed for bankruptcy protection, only the *net* proceeds from the sale of the homestead became part of the bankruptcy estate that he can claim as his exempt property; and (3) reversed the bankruptcy court's decision to allow the Penns a setoff and attorney's fees against the proceeds from the sale of Daniels's homestead.

Meanwhile, Daniels timely filed a notice of appeal in this Court appealing the state district court's order in the specific-performance suit. This Court dismissed his appeal for want of prosecution because Daniels failed to file an appellant's brief. *Daniels v. Penn*, No. 03-97-00086-CV (Tex. App.—Austin Aug. 28, 1997, writ denied) (not designated for publication). Daniels complained about this Court's dismissal to the Texas Supreme Court; his petition for review was denied, and on May 21, 1998, his motion for rehearing was overruled. This Court issued its mandate on June 17, 1998.

On October 1, Daniels agreed to execute the necessary documents to close the sale of the property. In order to quell fears that Daniels would continue to litigate the sale of his property, Botts and First American Title Insurance requested that Daniels sign a release, indemnity, and hold-harmless agreement in their favor before they would participate in the closing. At the time, Daniels was represented by counsel who prepared the agreement and, after Daniels signed the agreement,

5

notarized Daniels's signature to the agreement. The parties appeared and signed all the necessary closing documents. Then, on December 16, 1998, Daniels's bankruptcy trustee moved *to dismiss his voluntary Chapter 7 bankruptcy petition*; the bankruptcy court granted the motion.[2]

On March 29, 1999, Daniels, *pro se*, filed the underlying lawsuit naming as defendants all entities involved in closing the sale of the property. He contended that as a result of the sale, the appellees improperly received exempt homestead proceeds, that they were holding these exempt proceeds in trust for him, and that he commenced the suit for the sole purpose of recovering the exempt funds. Further, he contended that he was under duress when he signed the release because the Penns had threatened him with contempt of court if he did not close the sale of the property. Daniels contended that because he was under duress when he signed the release it was void as against public policy.

In three separate motions, all appellees moved for summary judgment. All three motions alleged traditional summary-judgment grounds as well as no-evidence summary-judgment grounds. *See* Tex. R. Civ. P. 166a(b), (i). With a single response and his own affidavit as summary-judgment proof, Daniels responded to all of the motions for summary judgment. In a final order, without specifying Rule 166a(b) or 166a(i) grounds, the district court granted the summary-judgment motions and ruled that Daniels take nothing on his claims. Daniels timely appealed the summary-judgment order.

---

[2] We are unable to ascertain the grounds for dismissal as the clerk's record contains only the bankruptcy court's dismissal order in which the court dismissed the petition using general language. The clerk's record does not contain the motion to dismiss the bankruptcy petition, which would have stated the grounds for dismissal.

6

## Discussion

A movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985); *Montgomery v. Kennedy*, 669 S.W.2d 309, 310-11 (Tex. 1984). In determining if a material issue of fact precludes summary judgment, the court takes as true all proof favorable to the nonmovant and indulges every reasonable inference and resolves all doubts in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548-49; *Montgomery*, 669 S.W.2d at 310-11. To prevail on summary judgment, a defendant, as movant, must establish as a matter of law all elements of an affirmative defense or show at least one element of plaintiff's cause of action has been conclusively established against the plaintiff. *Montgomery*, 669 S.W.2d at 310-311; *Gibbs v. General Motors Corp.*, 450 S.W.2d 817, 828-29 (Tex. 1970).

A no-evidence summary judgment is proper when the nonmovant fails to present more than a scintilla of proof raising an issue of material fact as to one or more essential elements of his claim on which he would have the burden of proof at trial. *Jackson v. Fiesta-Mart, Inc.*, 979 S.W.2d 68, 70-71 (Tex. App.—Austin 1998, no pet.). Rule 166a(i) provides that the nonmovant must present summary-judgment proof sufficient to raise a material fact on the elements attacked by the movant or the no-evidence motion must be granted. *In re Mission Consol. ISD*, 990 S.W.2d 459, 460 (Tex. App.—Corpus Christi 1999, orig. proceeding).

Daniels raises several issues arguing for a reversal of the summary judgment including: (1) there was an inadequate amount of time for discovery; (2) his claim of duress raised a material fact question that must be resolved by the fact finder; (3) the order to pay the Penns' attorney's fees

out of his exempt homestead proceeds violated the Texas Constitution and section 41.001 of the Texas Property Code; and (4) the state district court failed to recognize and enforce the opinions and judgments of the federal bankruptcy court and the district court.

### *Inadequate Time for Discovery*

We address first Daniels's challenge that appellees were not entitled to a no-evidence summary judgment because there had been an inadequate amount of time for discovery. Daniels raises this issue for the first time on appeal.

Civil Procedure Rule 166a(i) provides,

> *After adequate time for discovery*, a party without presenting summary judgment evidence may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial.

Tex. R. Civ. P. 166a(i) (emphasis added). It is the nonmovant's burden to raise an objection in the trial court that there has been insufficient time for discovery. *See Jaimes v. Fiesta-Mart, Inc.*, 21 S.W.3d 301, 304 (Tex. App.—Houston [1st Dist.] 1999, pet. denied); *Jackson*, 979 S.W.2d at 71 n.2.

On the same day, Daniels filed a *pro se* response to the three motions for summary judgment, he also filed a *pro se* motion for continuance and a verified affidavit. In his motion for continuance, Daniels stated that despite searching diligently for an attorney he had been unsuccessful in hiring counsel and needed more time to retain an attorney. He *did not* argue in the motion that he had had an inadequate amount of time for discovery. *Cf. McClure v. Attebury*, 20 S.W.3d 722, 729

8

(Tex. App.—Amarillo 1999, no pet. h.) (abated for bankruptcy). Daniels failed to preserve this contention for appellate review and has waived error, if any. *See* Tex. R. App. P. 33(a)(1)(A). Daniels's contention that the district court did not allow an adequate time for discovery is overruled.

***Does a Question of Fact Exist Regarding Daniels's Claim of Duress?***

On October 1, 1998, while represented by an attorney and before closing the sale of the property, Daniels signed an agreement binding himself, First American Title, and Botts Title in which he agreed he would:

> Release, Indemnify and Hold Harmless First American Title and Botts Title from any and all claims . . . causes of action or lawsuits of any kind or character . . . or being incident to the real estate transaction described above, including any loss, cost or damage of any kind or character arising out of or in any way connected with said real estate transaction.

In his petition, Daniels claimed that he was under duress when he signed this agreement and therefore it is void. On appeal, Daniels's only contention is that the district court erred in granting summary judgment because the issue about whether duress existed at the time he signed the agreement was a material question of fact that *must* be resolved by the fact finder. Daniels argues that "appellees have failed in showing any summary judgment proof that [he] did not sign the indemnity agreement under duress."

Contrary to Daniels's appellate contention, due to the fact that appellees filed no-evidence summary-judgment motions, it was incumbent upon him to produce more than a scintilla of evidence that he was under duress at the time he signed the release agreement. *See Esco Oil &*

9

*Gas, Inc. v. Sooner, Pipe & Supply Corp.*, 962 S.W.2d 193, 197 n.3 (Tex. App.—Houston [1st Dist.] 1998, pet. denied); Tex. R. Civ. P. 166a(i).

One who signs a contract is presumed to have read and understood its contents, unless he was prevented from doing so by trick or artifice. *Vera v. North Star Dodge Sales, Inc.*, 989 S.W.2d 13, 17 (Tex. App.—San Antonio 1998, no pet.). As a matter of law there can be no duress unless (1) there is a threat to do something that the threatening party had no legal right to do; (2) there is some illegal exaction or some fraud or deception; and (3) the restraint is imminent and such as to destroy free agency without present means of protection. *Brown v. Cain Chem., Inc.*, 837 S.W.2d 239, 244 (Tex. App.—Houston [1st Dist.] 1992, writ denied); *Sanders v. Republic Nat'l Bank*, 389 S.W.2d 551, 554 (Tex. Civ. App.—Tyler 1965, no writ).

In his affidavit filed in response to the motions for summary judgment, Daniels asserted that

> he would not have executed the indemnity agreement but for the duress and undue influence exerted upon [him] by the Defendants through the threat of being held in contempt and placed in jail. Defendant, First American Title Insurance Company asked that I sign the indemnity agreement so that the title companies could be protected from any cause of action. . . . The threat of an imminent contempt order placing me in jail while I was being released from the hospital destroyed my ability to freely act for myself. That undue influence effectively operated so as to subvert or overpower my mind at the time of the execution of the instrument in question, and I would not have executed that indemnity agreement but for the duress and undue influence exerted upon me by the Defendants through the threat of being held in contempt and placed in jail.

The essence of Daniels's argument is that he did not sign the release under his own free will because he had been threatened with the possibility of being held in contempt if he did not

10

close the sale of the property. According to Daniels's affidavit, the *Penns* were the parties that told Daniels they would seek a contempt-of-court ruling if he did not close the sale of the property. It is never duress to threaten to do that which a party has a legal right to do. *See Windham v. Alexander, Weston & Poehner, P.C.*, 887 S.W.2d 182, 185 (Tex. App.—Texarkana 1994, writ denied). The Penns prevailed in their suit for specific performance. As they began to execute on the judgment by seeking to close the sale of the property as ordered, Daniels resisted their efforts. There exists no summary-judgment proof that the Penns acted illegally when they threatened Daniels with a contempt proceeding if he did not close on the sale of the property as ordered. Because the Penns had a legal right to commence a contempt proceeding against Daniels if he did not participate in timely closing the sale of the property as ordered in the October 16 judgment, as a matter of law, there was no duress. Daniels's contention that he was under duress when he signed the release is overruled.

***Exempt Homestead Proceeds and Application of Bankruptcy Court Decisions***

In his third and fourth issues, Daniels complains that the district court did not apply properly the federal bankruptcy court and federal district court decisions when it granted summary judgment. Specifically, Daniels contends that summary judgment in this proceeding was improperly granted because the federal district court had ruled that the Penns were not entitled to set off from the purchase price their attorney's fees incurred during their specific-performance suit.

Daniels's appellate complaint appears in his brief as follows:

> On ***October 16, 1996***, the 155th Judicial District Court signed a judgment ordering Mr. Daniels to pay over $35,000 for [the Penns'] attorney's fees. It further ordered that these fees would be paid through the specific performance of that earnest money contract by and between Mr. Daniels and the Appellees, Scott and Elizabeth Penn, in

11

which Mr. Daniels was forced to sell his homestead. This order to pay the Appellees' attorney's fees from the proceeds of Mr. Daniels' homestead circumvents the constitutional and statutory provisions protecting Mr. Daniels' homestead, and proceeds from its sale, from the reach of general creditors. Tex. Const. Art. XVI, § 50; Tex. Prop. Code Ann. § 41.001 (Vernon Supp. 1998). The trial court abused its discretion in ordering that the proceeds from the sale of the homestead be used to pay the [Penns'] attorney's fees.

(Emphasis added.) Daniels's appellate complaint is directed at a portion of the *October 16* final judgment.

Appellees argue that Daniels is attempting to relitigate the attorney's fees issue. They contend that this issue was determined in the specific-performance lawsuit and Daniels is barred from relitigating the issue in this lawsuit. Additionally, the appellees contend that because Daniels's bankruptcy petition was dismissed before he filed this lawsuit, he is no longer entitled to the bankruptcy protections.

A common attempt to avoid the effect of a judgment is to commence a proceeding in another court, thereby attempting a collateral attack on the judgment. *Boudreaux Civic Ass'n v. Cox*, 882 S.W.2d 543, 548-49 (Tex. App.—Houston [1st Dist.] 1994, no writ). Such a collateral attack will not lie unless the judgment is void. *Stewart v. USA Custom Paint & Body Shop, Inc.*, 870 S.W.2d 18, 20 (Tex. 1994). A judgment is void so as to support a collateral attack only when (1) the rendering court lacked jurisdiction over the parties or property the subject of the judgment; (2) lacked jurisdiction over the subject matter; (3) lacked jurisdiction to render the particular judgment entered; or (4) lacked the capacity to act as a court. *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) (citing *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985)). Errors other than lack of jurisdiction render a judgment merely voidable. *See id.* That is, all errors other than jurisdictional

12

deficiencies render a judgment merely voidable, and such errors must be corrected *only* upon a direct attack in the court that rendered the judgment or in an appellate court with jurisdiction. *Woodfin v. Coleman*, 931 S.W.2d 383, 385 (Tex. App.—Austin 1996, writ denied).

We hold that Daniels's appellate complaint that he was improperly ordered to pay the Penns' attorney's fees is directly related to the specific-performance lawsuit. By raising the issue in this lawsuit, Daniels is collaterally attacking the previous judgment. If Daniels disagreed with the state district court's October 16 final judgment, he was required to timely raise the homestead-proceeds issue at that time and follow through with a direct attack on that judgment. Under these facts a collateral attack is not proper. Additionally, we note that Daniels's bankruptcy petition was dismissed *before* he filed this lawsuit. While he is no longer subject to the restrictive nature of the federal bankruptcy code, he also is not entitled to its protections. Daniels's third and fourth issues are overruled.

### Conclusion

Having addressed all of Daniels's complaints, we affirm the district court's summary judgment.

_____

Lee Yeakel, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

13

Filed:   December 21, 2000

Do Not Publish