Richard L. WILLIAMS, Sr., et al., Appellants,

v.

BAKER EXPLORATION COMPANY, et al., Appellees.

No. 10–88–049–CV.

Court of Appeals of Texas, Waco.

Jan. 26, 1989.

Rehearing Denied March 2, 1989.

**194**

Kathleen Cynthia Pickett, Kathleen Cynthia Pickett & Associates, Houston, for appellants.

Sam B. Cobb, Jr., Sam B. Cobb, Jr. & Associates, P.C., Tyler, for appellees.

HALL, Justice.

Appellants, lessors under a certain oil, gas and mineral lease, sued McMurrey Petroleum, Inc., and appellees and others in their capacities as past or present lessees who owned or own working interests in the lease, for non-payment and conversion of oil and gas royalties attributable to five separate wells on five separate units established under the lease, as well as for statutory interest and other damages.

Appellees moved for summary judgment solely upon the undisputed fact that appellants had signed division orders to sell their royalty oil and gas during the relevant times in question to the operator of the wells and units, McMurrey Petroleum, Inc. The motion was granted and summary judgment was rendered that appellants take nothing against appellees. This appeal resulted after appellants' suit against appellees was severed from the other actions. We reverse the judgment, and we remand the case to the trial court.

Rule 166a(c), Tex.R.Civ.Proc., provides that a motion for summary judgment shall state the specific grounds therefor; and that the judgment sought shall be rendered forthwith if the summary judgment evidence in the record shows that, except as to the amount of damages, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion or in an answer or any other response.

■ Defendants moving for summary judgment must expressly present and conclusively prove their defense as a matter of law; there can be no genuine issue of material fact; evidence favorable to the non-movants will be taken as true; and every reasonable inference from the evidence must be indulged in favor of the non-movants and any doubts resolved in their favor. *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

The lease in question provides in part as follows:

3. As royalty, lessee covenants agrees: (a) to deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal one-eighth part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such one-eighth part of such oil at wells as of the day it is run to the pipe line or storage tanks, lessor's interest in either case, to bear one-eighth of the cost of treating oil to render it marketable pipe line oil; (b) to pay lessor on gas and casing head gas produced from said land (1) when sold by lessee, one-eighth of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of one-eighth of such gas and casing head gas. ... In event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to acreage owned by each.

8. The rights and estate of any party hereto may be assigned from time to

time in whole or in part as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns....

The lease was the subject of multiple assignments. Appellees are composed of prior lease owners and of present lease owners. It is also undisputed that at all pertinent times parts of the leased acreage were included within five pooled producing units; that the units were operated by McMurrey Petroleum, Inc.; and that appellants each signed a separate division order addressed to McMurrey which separately covered each of the units/wells in which that appellant owned an oil and gas royalty interest which is the subject of this litigation. Each division order included the following language:

Effective 7:00 a.m. with first runs, and until further written notice, subject to the conditions, covenants and directions hereof, you are authorized to receive and to purchase such oil and/or gas and to give credit for such and/or gas as directed below:

This provision in the division order was immediately followed by the name of the lessor to whom the credit was to be given, and the "division of interest of that lessor." Paragraph 6 of the division order provided in part that for the amount due on account of the oil received during each calendar month, payment was to be made by McMurrey in the next succeeding month by mailing a check to the lessor at the address given in the division order with his name.

This suit against McMurrey and appellees and others resulted after McMurrey ceased making royalty payments to appellants required under the division orders. Appellants pleaded the lease, mesne assignments under the lease, the default by McMurrey in required payments to appellants, and that McMurrey was appellees' agent-operator.

Appellees' answers included general denials and these special allegations:

Each of these defendants states that his or its interest in each of the five units and wells described in plaintiffs' petition is operated by McMurrey Petroleum, Inc., under the terms of a joint operating agreement which expressly provides that the operator, and not any of these defendants, controls operations of the units, leases, and wells, and therefore, each is not responsible to plaintiffs for any defalcation, breach of contract or tortious behavior of McMurrey Petroleum, Inc. Plaintiffs agreed to sell and did sell their royalty oil and gas produced from each of the said unit wells to McMurrey Petroleum, Inc., under a division order covering such unit well. These defendants did not receive any part of the plaintiffs' royalty oil and gas or the proceeds of the sale of plaintiffs' oil and gas and have no liability to plaintiffs for that oil and gas.

Appellees' motion for summary judgment was based upon allegations that they own either non-operating working interests or overriding royalty interests in the wells; that appellants did not claim that appellees received any of appellants' royalty proceeds retained by McMurrey, but, instead, appellants sought to impose liability for the unpaid royalty merely because appellees own or once owned interests in the lease; that nothing in the operating agreements between McMurrey and the non-operating working interest owners created an agency relationship; that pursuant to the terms of each division order appellants' royalty oil was sold only to McMurrey and not to any appellee, and under the division order each appellant looked solely to McMurrey for payment for the oil sold; that appellees were not involved in the transactions between appellants and McMurrey, and derived no benefit from those transactions; and the fact that McMurrey failed to do as it promised did not impose any additional liability on appellees.

■ Appellees cite *Cabot Corporation v. Brown*, 754 S.W.2d 104 (Tex.1987), and *Exxon Corp. v. Middleton*, 613 S.W.2d 240 (Tex.1981), as supporting their proposition that a division order can alter and excuse the terms of a lease royalty payment provision between the lessor and the lessee; and that in our case the duty imposed by the

lease for royalty payment to the lessor by the lessee was superseded by the new agreement created by the division orders, by which appellants sold their royalty oil to McMurrey. We disagree with appellees' reading of the *Brown* and *Middleton* cases. The essence of the holdings in both cases was that division orders executed by royalty owners which obligated the purchaser to pay royalties at lower rates than those required under the lease royalty clauses were nevertheless binding on the royalty owners until revoked. The opinions in both cases point up that division orders do not supplant the lease contract, but that they are binding between the parties "for the time and to the extent that they have been or are being acted on and made the basis of settlements and payments, and from the time that notice is given that settlements will not be made on the basis provided in them, they cease to be binding." See *Brown*, 754 S.W.2d at 107-8. In both *Brown* and *Middleton*, the royalty payments required in the division orders were paid. In our case, appellants seek royalty payments called for in the division orders that were not paid. *Brown* and *Middleton* do not excuse the lessees from payment of the lessors' royalty merely because there have been division orders executed by the lessors in favor of a purchaser of the leasehold oil and gas. We know of no authority that permits such use of a division order without express provision in the order for it.

■ In their brief, appellees name five of their number as being prior lease owners who presently own no working interest in the lease. They claim that these named appellees are expressly released from any liability to appellants for payment of royalty following assignments of their interests in the lease, under the provision in paragraph three of the lease that states, "In event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of the lease, severally as to acreage owned by each." We would be inclined to agree with these five appellees that the lease provision would support the summary judgment in their favor, but this ground for the judgment was not pleaded by appel-lees and it was not raised in their motion for the summary judgment. Moreover, appellants alleged that McMurrey was the agent of all appellees. Although appellees assert in their brief that this agency relationship did not exist, they did not bring forward summary judgment evidence to prove that McMurrey was not their agent. They cite *Ayco Development Corp. v. G.E. T. Service Co.*, 616 S.W.2d 184 (Tex.1981), for the rule that designating a person to be the operator of the wells does not make him the non-operators' agent. However, in *Ayco* the Supreme Court concluded "that the unambiguous contracts and the proof show no more than that the *Ayco* defendants invested in the venture, but had and exercised no right to participate in the control or operation of the venture." In our case, appellees did not bring forward their operating agreements with McMurrey or offer any other proof on the agency issue pleaded by appellants.

■ Appellants assert that appellees are all liable whether prior or present owners in the lease because of the provision in paragraph eight stating, "All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns and successive assigns." We disagree with appellants. In our view, the provision in paragraph eight does not conflict with the provision in paragraph three that would release prior owners. The provision in paragraph eight simply states that all parties to the lease agreement are bound by its terms. This would include and bind appellants to the provision in paragraph three.

We reject appellees' contention that under the division orders they were entitled to the summary judgment as a matter of law. We hold also that there is an unresolved fact issue on the agency question in the summary judgment record as to all appellees. Accordingly, we reverse the judgment and remand the case to the trial court.