

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00189-CV

_____

In the Interest of S.W., a Child

On Appeal from the 360th District Court
Tarrant County, Texas
Trial Court No. 360-677800-20

Before Sudderth, C.J.; Kerr and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth
Concurring Opinion by Justice Birdwell

# MEMORANDUM OPINION

Father[1] appeals the trial court's order granting the motion for summary judgment filed by Little Flower Adoptions. In one issue with two subissues, Father argues that the trial court erred by granting the motion for summary judgment. Because we hold that the trial court did not err by granting the motion for summary judgment, we will affirm.

## I. BACKGROUND

### A. Prior Proceedings

S.W. was born on October 5, 2019. S.W.'s mother (Mother) signed an affidavit voluntarily relinquishing her parental rights to S.W and placed the child for adoption with Little Flower. Little Flower brought suit to terminate Mother's parental rights and the parental rights of the unknown biological father.

Just over a month after S.W.'s birth, on November 8, 2019, the trial court signed an order terminating the parental rights of Mother and the child's biological father[2] to S.W. and naming Little Flower as managing conservator of S.W.[3]

---

[1]Father claims to be the biological father of the child S.W. We refer to him as Father to protect the minor's identity. *See* Tex. R. App. P. 9.8(b)(2); Tex. Fam. Code Ann. § 109.002(d); *In re J.P.*, 598 S.W.3d 789, 791 n.1 (Tex. App — Fort Worth 2020, pets. denied).

[2]The trial court found that Father had not registered with the paternity registry within the time prescribed by law under Chapter 160 of the Texas Family Code.

[3]Mother and Father filed a restricted appeal from the order terminating their parental rights to S.W. This Court affirmed the trial court's judgment terminating

Approximately one month after that—on December 16, 2019—Mother and Father filed a suit affecting the parent—child relationship (SAPCR) asking to be named joint managing conservators of S.W. The disposition of the SAPCR suit filed by Mother and Father is not clear from the record before us.

Two months later—on February 24, 2020—Mother filed a bill of review seeking to set aside the trial court's order of termination, and then on June 2, 2020, Mother and Father filed a Joint Amended Petition for Bill of Review seeking the same relief. Little Flower filed a motion for summary judgment that the trial court granted as to both Mother and Father. Mother and Father appealed, and this Court affirmed the summary judgment as to Mother but reversed the summary judgment as to Father. *In re S.W.*, No. 02-20-00160-CV, 2021 WL 4783153 (Tex. App.—Fort Worth Oct. 14, 2021, no pet.) (mem. op.). We held that Little Flower carried its summary judgment burden as to Mother by conclusively showing Mother's negligence in that she failed to exercise due diligence in pursuing all legal remedies. *Id.* at *4. But because Father was never made a party to the termination suit, we held that his failure to file a motion for new trial could not be counted against him as neglect, and we remanded to the trial court for development of Father's remaining arguments. *Id.* at *5–6.

---

Mother's parental rights and dismissed Father's appeal for want of jurisdiction. *In re S.W.*, 614 S.W.3d 311 (Tex. App.—Fort Worth 2020, no pet.).

**B. This Proceeding**

After this Court remanded to the trial court for further proceedings as to Father, Little Flower again filed a traditional motion for summary judgment addressing Father's remaining claims. In its motion, Little Flower argued that Father did not plead and prove a meritorious defense to set aside the trial court's judgment, addressing all four grounds that Father claimed established a meritorious defense: (1) Father's due process rights were violated because he was entitled to notice and service, (2) Little Flower never searched the Texas Acknowledgement of Paternity Registry[4], (3) Little Flower purposefully left Father out of the termination proceedings, and (4) Little Flower did not have standing.

First, Little Flower argued that Father was not entitled to notice of the underlying termination proceedings because he failed to register with the paternity registry. *See* Tex. Fam. Code Ann. §§ 160.402(b), 160.404, 161.002(b)(3). Second, Little Flower attached as summary judgment evidence the certificate of paternity search filed in the underlying termination proceedings to negate Father's argument that Little Flower did not conduct a search of the paternity registry. Third, Little Flower argued that any alleged misconduct on its part did not relieve Father of his obligation to register with the paternity registry. Finally, Little Flower cited Section

---

[4]The relevant statutes for the paternity registry are located in Family Code Chapter 160, Subchapter E.

102.003(a)(7) of the Family Code to prove its standing to file suit. *See* Tex. Fam. Code Ann. § 102.003(a)(7).

Father responded to the summary judgment motion twofold. He argued that he had a meritorious defense but was prevented from asserting it due to fraud on the part of Little Flower. Father further argued that Little Flower violated his constitutional right to assert his parental rights under both the Texas Constitution and the United States Constitution. Father attached as summary judgment evidence his own affidavit, the affidavit of Mother, screen shots of text messages between Mother and Little Flower, and several court filings.

After a hearing, the trial court granted the summary judgment motion of Little Flower "in its entirety" and ordered that Father take nothing by his suit. This appeal followed.

## II. DISCUSSION

### A. Standard of Review

When, as here, a bill of review is disposed of through summary judgment, we review the case de novo under the summary judgment standard. *Mandel v. Lewisville Indep. Sch. Dist.*, 499 S.W.3d 65, 70 (Tex. App.—Fort Worth 2016, pet. denied); *see In re Child*, 492 S.W.3d 763, 766 (Tex. App.—Fort Worth 2016, pet. denied). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann*

*Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). If the movant does not satisfy its initial burden, the burden does not shift to the nonmovant, and the nonmovant need not respond or present any evidence. *Amedisys, Inc. v. Kingwood Home Health Care*, LLC, 437 S.W.3d 507, 511 (Tex. 2014); *S.W.*, 2021 WL 4783153 at *2.

A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for a new trial or direct appeal. *Mabon Ltd. v. Afri-Carib Enters., Inc.*, 369 S.W.3d 809, 812 (Tex. 2012). "Courts narrowly construe the grounds on which a plaintiff may obtain a bill of review due to Texas's fundamental public policy favoring the finality of judgments." *Id.* Ordinarily, a bill-of-review plaintiff must plead and prove "(1) a meritorious defense to the underlying cause of action, (2) which the plaintiff[ ] [was] prevented from making by the fraud, accident, or wrongful act of the opposing party or official mistake, (3) unmixed with any fault or negligence on [her] own part." *Id.* If he was not served and was entitled to service, then he is relieved from showing a meritorious defense, he is not required to show his opponent's fraud, accident, or wrongful act prevented him from presenting such a defense, and his own want of

6

fault of negligence is established. *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998). A summary judgment will be granted against the bill of review petitioner if the summary judgment movant can establish the absence of any of the three elements of the bill of review. *See Montgomery v. Kennedy*, 669 S.W.2d 309, 311-312 (Tex. 1984); *see also In re Baby Girl S.*, 407 S.W.3d 904, 909 (Tex. App.—Dallas 2013, pet. denied).

## B. Applicable Law

The Family Code provides a statutory mechanism to protect a man's right to notice of certain legal proceedings involving a child that he may have fathered. Tex. Fam. Code Ann. § 160.402. Specifically, Section 160.402(a) affords to a man who has registered with the Texas Paternity Registry within 31 days of the child's birth[5] the right to be notified of any proceeding involving the adoption of the child, or the termination of parental rights regarding the child, that he may have fathered.[6]

---

[5]The alleged father may register before the birth of the child as well. Tex. Fam. Code Ann. § 160.402(a)(1).

[6]The Family Code provides that:

(a)  Except as provided by Subsection (b), a man who desires to be notified of a proceeding for the adoption of or the termination of parental rights regarding a child that he may have fathered may register with the registry of paternity:
    (1)  before the birth of the child; or
    (2)  not later than the 31st day after the date of the birth of the child.
Tex. Fam. Code Ann § 160.402(a).

On the other hand, if an alleged father has not registered with the paternity registry in compliance with Section 160.402(a), he is not entitled to notice of adoption or parental termination proceedings.[7]  Tex. Fam. Code Ann. § 161.002(b)(3), (c-1). The Family Code imposes no obligation on the mother, an adoption agency, or anyone else, to identify or locate an alleged father who has not registered with the paternity registry.  On its face, this statutory scheme applies to all men who "may have fathered" a child, whether or not they are aware of the mother's pregnancy or the birth of the child.

## C.  Meritorious Defense

In his first subissue, Father argues that he has a "meritorious defense in that but for the intentional collusion to commit fraud between [Little Flower] and [Mother], [Father] would have been able to register with the paternity registry and/or intervene in the underlying termination proceedings so that he could have asserted his parental rights in the required statutory timeframe."

Although there is some evidence to the contrary, Father claims that he did not learn of S.W.'s birth until December 7, 2019, twenty-nine days after his rights had already been terminated.  And it is undisputed that at that point, Father had neither registered with the registry of paternity, nor had he commenced a proceeding to

[7]The Family Code provides two exceptions.  If a father-child relationship has been established by law, or if the alleged father has commenced a proceeding to adjudicate his paternity prior to the termination of his rights, he is entitled to notice of adoption or parental termination proceedings.  Tex. Fam. Code Ann. § 160.402(b).

adjudicate his paternity.[8]  *See* Tex. Fam. Code Ann. § 160.402(a)(b).  Thus, the right to notice that would have been afforded to him under Section 160.402(a) and (b) was never triggered.

But Father argues he was denied the benefits of Section 160.402(a) and (b) due to collusion between Mother and Little Flower.  In support of his argument, Father relies on the summary judgment evidence from Mother's affidavit wherein she stated that she provided Father's name and address to Little Flower and that Little Flower instructed her not to include Father's name on the birth certificate.  Father also points to the summary judgment evidence of screen shot images of text messages between Mother and Little Flower, one of which included a message from Little Flower to Mother instructing her to "leave the father info blank otherwise he has to sign paperwork and it slows things down."

But this evidence, even when viewed in the light most favorable to Father's position, still falls short of proving that Mother and Little Flower fraudulently prevented him from asserting his parental rights.  While Mother and Little Flower may have been aware of Father's identity, and while they may not have notified the court about Father or notified Father about the court proceedings, there is no evidence in this record that they defrauded Father in any way.[9]

---

[8]Father filed an Acknowledgement of Paternity on December 31, 2019.

[9]To commit common-law fraud, Mother and Little Flower must have made a material representation to Father that was either false or made recklessly, as a positive

Father engaged in sexual activity with Mother, the consequences of which not only could have, but also actually did, result in pregnancy. The paternity registry exists for just such circumstances—it allows an alleged father to register as to any child that he *may* have fathered. Tex. Fam. Code Ann. § 160.402(a). If a man wants to be provided notice of parental termination proceedings regarding a child that he may— either potentially or actually—have fathered, the registry is available to him to ensure that he receive such notice. As the Dallas Court of Appeals has pointed out, the process of registering is free, the information provided in the registration process is confidential, and there is no penalty for registering if no child is actually conceived. *Baby Girl S.*, 407 S.W.3d at 914. Under this statutory scheme, whether to register is within the complete control of alleged fathers. *Id.* And whether or not Father was aware of the law regarding paternity registration, he was nevertheless afforded an opportunity to assert his rights as to any child that he may have fathered with Mother, or with any other woman, for that matter.

---

assertion, without knowledge of its truth. The representation must have been made with the intent that Father act upon it, and Father must have acted on it, causing injury. *Int'l Bus. Machines Corp. v. Lufkin Indus.*, 573 S.W.3d 224, 228 (Tex. 2019). There is no summary judgment evidence to support this claim.

To commit fraud by nondisclosure, among other things, Mother and Little Flower must have had a duty to disclose S.W.'s birth to Father. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998). Father offered no legal theory to support a claim that Mother and Little Flower owed him any duty of disclosure.

Not only does the law provide fathers with this opportunity, the failure to take advantage of this opportunity produces legal consequences. In particular, Section 161.002(b)(3) allows an unregistered father's rights to be terminated without notice to him. And the statute carves out no exception for situations where a mother knows the father's identity or location and fails to reveal that information, or when she fails to notify the father of the pregnancy or birth. Under this statutory scheme, neither mothers nor adoption agencies are required by law to identify, locate, or notify an alleged father who has not registered with the paternity registry. *See* Tex. Fam. Code Ann. § 161.002(c-1).

The bottom line is that there is no summary judgment evidence that Father was fraudulently prevented from registering. Father's summary judgment proof that Mother and Little Flower did not identify, locate or notify him does not supply that proof. Nor is Mother's decision to omit Father's name on the birth certificate—even if based on advice from Little Flower—evidence that Father was fraudulently prevented from registering. In sum, while the summary judgment evidence may have established that Mother and Little Flower failed to identify him even though he was known to them, it does not prove that Mother and Little Flower fraudulently colluded to prevent him from timely registering with the paternity registry. At all times, the registry process remained available to Father, and even assuming that he was unaware of the protections afforded him under this statutory scheme, the lack of evidence of fraud remains unchanged. Under this statutory scheme, Father's ignorance of the law

11

imposes no additional duty on Mother or Little Flower to disclose S.W.'s birth to Father or Father's identity in a birth certificate or in parental termination proceedings. *Baby Girl S.*, 407 S.W.3d at 915.

We overrule subissue one.

## D. Due Process

In his second subissue, Father argues that Little Flower's intentional fraud and collusion with Mother to not acknowledge him as the father of the child violated his right to due process under the United States Constitution[10] and the Texas Constitution.[11] Specifically, Father argues that the application of the statutes allowing termination of an alleged father's parental rights without notice deprived him of his due process rights.

This is the same argument that the Dallas Court of Appeals addressed in *Baby Girl S*. In that case, the biological father argued that the statute allowing termination of his parental rights without notice was unconstitutional as applied to him. *Id.* at 911. Like here, the mother did not name the biological father of Baby S at the time she put the infant up for adoption. She also claimed that she did not know the father's name.

---

[10] The Fourteenth Amendment provides that no State shall deprive any person of life, liberty, or property without due process of law. U.S. Const. Amend XIV § 1.

[11] Article 1 Section 19 of the Texas Constitution provides that no citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land. Tex. Const. art. I § 19.

12

*Id.* at 906. Unaware of the pregnancy or birth of Baby S, the biological father did not register with the paternity registry, and his rights were terminated without notice to him. *Id.* at 907. An adoption agency was named as the baby's managing conservator, and the biological father learned of the child's birth the following month. *Id.*

In *Baby Girl S.*, our sister court, relying on the plain language of the statute, pointed out that the paternity registry allows an alleged father to register if he desires to be notified of a proceeding for the adoption of or the termination of parental rights regarding a child that he *may* have fathered. Tex. Fam. Code Ann. § 160.402(a). But if an alleged father fails to register, there is no requirement that he must be identified or located; if the child is under one year of age when the petition for termination or adoption is filed, the rights of an unregistered father may be terminated without notice under Family Code Section 161.002(b)(3). Tex. Fam. Code Ann. § 161.002(c-1); *Baby Girl S.*, 407 S.W.3d at 914.

In reaching its decision that the alleged father's constitutional rights had not been violated, the court distinguished between a situation where a father had a developed relationship with his child and a situation where an alleged father's link to his child was merely biological. The court adopted the reasoning of the Kansas Supreme Court that the "liberty interest resulting in a right to notice" arises in the former situation, not the latter, because it is the "developed familial relationship," not mere biology, that warrants protection. *Baby Girl S.*, 407 S.W.3d at 916.

13

Here, as in *Baby Girl S.*, we are not being asked whether the statutory scheme adequately protected the rights of an alleged father who had a developed relationship with his child, but rather we are only asked to consider whether the safeguards provided in the paternity registry are adequate to protect an alleged father who was unaware of the pregnancy or birth and whose only link to his child is biological. *See id.* at 914. As the court in *In re Baby Girl S.* explained:

> the registry provides an alleged father with the means of asserting his rights without depending on the mother, the courts, or anyone else to identify him. By registering, an alleged father ensures he will be notified of any proceeding to adopt the child or to terminate his rights. It also provides a measure of privacy for the mother who, for any number of reasons, may not want to divulge the biological father's name. Finally, it reduces any delays in an adoption proceeding because an unknown father is either registered or he is not. If he is, he gets notice.

*Id.* at 915. The court cited the United States Supreme Court decision in *Lehr v. Robertson* to point out that even if the biological father knew nothing about the registry, that would not relieve him of the requirement to follow the law. 463 U.S. 248, 264, 103 S.Ct. 2985, 2995 (1983). The Dallas court held that the statutory scheme permits an alleged father to protect himself by invoking statutory procedures to ensure that he received notice and that the biological father's failure to do so does not render the procedure unconstitutional. *Baby Girl S.*, 407 S.W.3d at 915.

Father attempts to distinguish *Baby Girl S.* by pointing out that in that case the biological mother was the only party who concealed the father's identity, whereas and in this case Little Flower, the movant of the termination proceedings, also knew his

14

identity before termination and concealed it. We find that to be a distinction without a difference. In both cases the biological fathers allege that their identities were wrongfully concealed.

We are persuaded by the reasoning of *Baby Girl S.* and hold that the statutory scheme of the paternity registration is not unconstitutional as applied to Father. Father engaged in conduct with Mother that could have resulted in the conception of a child. The paternity registry provided Father with the means of asserting his rights to any child that might have been conceived without depending on Mother, the courts, or anyone else to identify him. *See Baby Girl S.*, 407 S.W.3d at 915. The fact that he may not have registered because of "his ignorance of the law" was not "sufficient reason for criticizing the law itself." *Id.* at 914 (quoting *Lehr v. Robertson*, 463 U.S. at 264).

When enacting the statutory procedures creating the paternity registry, the Texas Legislature could have provided a defense or exception for fathers who were unaware of the birth of their child and claim that they were prevented from learning about the birth by the fraud or deceit of another. The Legislature chose not to do so.

We are mindful of the delicate balance between the goal of protecting the rights of fathers and the need to insure a stable home for the child by determining as early as possible the rights and interests of all parties. The statutory scheme complained of here allowed Father to protect himself by invoking statutory procedures to insure he received notice. *See Baby Girl S.*, 407 S.W.3d at 915. Father failed to do so, and that

15

failure does not now render the statutory procedure unconstitutional. *Id.* Accordingly, we hold that the trial court did not err by granting Little Flower's motion for summary judgment. We overrule Father's second subissue.

### III. CONCLUSION

Having overruled Father's two subissues in his sole issue on appeal, we affirm the trial court's judgment granting Little Flower's motion for summary judgment.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: April 27, 2023